RAY H. GILLIAM V. MIKE KOUCHOUCOS.

No. A-7629. Decided November 9, 1960.
Rehearing Overruled December 7, 1960.
(340 S.W. 2d Series 27)

*Cureton & Lanham,* and *W. E. Cureton* of Waco, *Keith, Mehaffy, McNicholas & Weber,* and *Quentin Keith,* of Beaumont, for petitioner.

*Adams & Browne* and *Gilbert T. Adams,* of Beaumont for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit involves the application of the Statute of Frauds,

Article 3995, Section 5,[1] to an oral contract of employment for the term of ten years, and where the testimony also shows that it was agreed that "this contract and agreement shall, however, terminate on the death of the operator."

The parties are in agreement as to the terms of the oral contract. The question here is whether the agreement is within the prohibition of the statute, notwithstanding the possibility of termination within less than a year by reason of respondent's death. An analogous question was before this court in the case of Chevalier v. Lane's, Inc., 1948, 147 Texas 106, 213 S.W. 2d 530, 6 A.L.R. 2d 1045. In that case, the question was answered in the affirmative. In the present case the trial court sustained petitioner's motion for an instructed verdict and rendered judgment that the respondent take nothing. The judgment was based solely on the ground stated in petitioner's motion that the contract was within the prohibition of the statute. The Court of Civil Appeals reversed the judgment of the trial court, thereby holding that under the cases of Chevalier v. Lane's, Inc., supra, and Wright v. Donaubauer, 137 Texas 473, 154 S.W. 2d 637, the contract was not within the prohibition of the Statute of Frauds. In reaching its conclusion the court said: "Under the authorities, when, under the terms of an oral agreement, an employment is to close on a *contingency* which may happen within a year, the oral agreement is not within the statute. The 'contingency' in the instant contract is the possible death of appellant within one year from the date of the contract. We think the parties had that *contingency* in mind when they agreed 'This contract and agreement * * * shall, however, terminate on the death of the operator.' " 328 S.W. 2d 817. [Emphasis added.]

We have concluded to reverse the judgment of the Court of Civil Appeals and affirm that of the trial court for the reasons now stated.

The respondent contends that in the case of Chevalier v. Lane's Inc., the court was considering an oral agreement which contained no reference to the possible death of plaintiff or other contingency that might prematurely terminate the arrangement.

---

1.—"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

\* \* \*

"5. Upon any *agreement which is not to be performed within the space of one year from the making thereof.*" Acts 1840, p. 28; P.D. 3875; G.L. Vol. 2, p. 202.

Respondent reasons further that since the present agreement contains the language that "This contract and agreement shall, however, terminate on the death of the operator * * * " the contract of employment for ten years is not within the prohibition of the statute, and such provision brings the case squarely within the rule that the statute does not apply where the agreement may, *by its own terms*, be fully performed within the year.

In the Chevalier case, this court reaffirmed our holding in the case of Wright v. Donaubauer, supra, and, in doing so, said: "* * * Where the agreement may, by its own terms, be fully 'performed' within the year, as, for example, the agreement in Wright v. Donaubauer, * * * for employment during the term of a man's life, the statute does not apply. * * *" The Court of Civil Appeals has construed this language, used by the court in Chevalier, and the holding in Wright v. Donaubauer, supra, to mean that the defeasance provision in the present agreement with reference to termination on death is equivalent to an alternative form of performance. With this construction we cannot agree. When this court used the Wright v. Donaubauer case as an example, and expressly reaffirmed the holding in that case, it clearly stated the character of an agreement to which the statute would have no application. There the agreement was for employment during the term of a man's life. In the present case, the contract of employment is for a term of ten years. The statute relates to a contract "not to be *performed* within the space of one year from the making thereof." It thus has application only to contracts which are terminated *by performance*, and does not apply to contracts which may be terminated within a year by some means other than performance. All personal service contracts are terminated by death. Therefore, the addition of the words "but the agreement shall terminate on the death of the operator," added nothing. The statute is applicable even where the parties expressly provide, as here, for the termination of the agreement in the case of death of either of the parties. We hold that the rule announced in the Chevalier case, supra, brings the present case within the prohibition of the statute. The fact that the parties expressed the result that otherwise would have occurred by operation of law does not take this case out of the Statute of Frauds. The result in the Chevalier case would not have been different had the agreement in that case contained a similar termination provision as we have here.

In the case of Deevy v. Porter et al., 11 N.J. 594, 95 A. 2d 596, 597, the court said: "* * * On the other hand, where the oral agreement does bear a fixed term and is not to be performed

within the year it is held to be within the statute even though the obligations thereunder may be terminable by operation of law well within the year; the most common illustration is an oral agreement for personal services for a fixed period exceeding one year but terminable by operation of law upon death."

In the case of Barnes v. P. & D. Mfg. Co., 123 N.J. L. 246, 8 A. 2d 388, the court held that termination, through bankruptcy or breach did not mean completion or performance, and that the oral contract was in the Statute of Frauds. The court in that case quoted language from the case of Marble v. Town of Clinton, 298 Mass., 87, 89, 9 N.E. 2d 522, 524, 111 A.L.R. 1101 which we deem appropriate here. The quotation reads: "Contracts for service for more than a year * * * at the election of a party upon the happening of some event or even at the mere will of a party, have generally been held to be within the statute. The contemplated performance would occupy more than a year. If the contract should be terminated within the year, the result would not be an alternative form of performance, but excusable nonperformance."

Williston states that:

"The distinction doubtless is a fine one between the performance of a promise on the one hand, and an excuse for nonperformance on the other, especially when under the heading of excuse for non-performance must be included an excuse provided by the contract itself by way of defeasance or condition subsequent.

"The distinction involves the form of the contract quite as much as its substance but, as has been said: 'To the criticism that the distinction is more technical than substantial, it may well be answered that the ancient statute is itself rather technically worded.' That the form of the contract may be involved in this distinction is demonstrated by the following illustrative cases:

"1. A promise to serve two years;

"2. A promise to serve as long as the employee lives, not exceeding two years;

"3. A promise to serve two years if the promisor lives so long;

"4. A promise to serve two years, but if the promisor dies the contract shall be terminated.

"It is obvious that all these promises have substantially the same meaning and, if enforceable, the same legal effect; yet certainly the first promise, and presumably the fourth, are within the Statute, while certainly the second and presumably the third are not." *Williston on Contracts,* Third Edition, Section 499. See also, Ibid, Section 498.

Obviously, the present case falls in the fourth class. This distinction has been adopted in the Restatement. See Restatement, Contracts (1932), Section 198, Comment (c).

Although there is respectable authority to the contrary (See *Corbin, Contracts,* 1950, Section 275 et seq.) this court is definitely committed to the view herein declared. The rule adopted is without doubt in accord with the rule adopted by a majority of the Courts of the United States. The case of Chevalier v. Lane's, Inc., supra, recognized this conflict of authority and rejected the minority contention as pronounced in such cases as Weatherford, Mineral Wells & Northwestern Ry. Co. v. Wood, 88 Texas 191, 30 S.W. 859, 28 L.R.A. 526; Great Atlantic & Pacific Tea Co. v. Warren, Texas Civ. App., 44 S.W. 2d 510, wr. ref., and others of a like holding. The opinion reflects that an exhaustive study was made of the authorities, and the origin of the statute was traced back to its counterpart in the 1677 Statute of King Charles II, which was the same as paragraph 5 above quoted. The result reached in Chevalier v. Lane's, Inc. is in full accord with English law, as well as the great weight of authority in that country. See Hanau v. Ehrlich (1912) A.C. 39; 7 Halsbury's Laws of England (2d ed. 1932), 111; Deevy v. Porter, supra.

"In the Hansu case, Lord Alverstone differentiated the controlling lines of English cases, saying:

" 'The one class of cases decides that if there is no mention of time, and the time is uncertain, the agreement is not within the statute. The other class of cases decides that if the time mentioned is more than one year, but there is power to determine, th agreement is within the statute. I have never been able to see why this is not a perfectly good working construction of this statute.' "

This court, speaking through MR. JUSTICE GARWOOD, said in Chevalier v. Lane's, Inc., supra, (1948) :

"* * * We accordingly restate the rule so that where, by the terms of the oral agreement, its period is to extend beyond a

year from the date of its making, the mere possibility of its termination by operation of law within the year, because of death or other fortuitous event, does not render paragraph 5 of the Statute inapplicable, * * * ."

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered November 9, 1960.

MR. JUSTICE GRIFFIN dissenting.

I respectfully dissent from the majority opinion for the reasons herein stated.

When I consider the case of Chevalier v. Lane's (1948), 147 Texas 106, 213 S.W. 2d 530, 6 A.L.R. 2d 1045, I cannot get the result reached by the majority. In my opinion, the majority is in error in their construction of the test to be used. As I understand the Chevalier case, it means that an oral contract, or an "agreement," is within the Statute of Frauds if its performance in less than a year depends upon the operation of law, or other fortuitous circumstances *not provided for** in the agreement between the parties. *If the parties agree* that the contract shall be performed within a year upon the death of one of the parties, or other circumstance set out in the contract, then the Chevalier case holds such agreement is not within the Statute, and the agreement may be enforced although it is oral.

Let us examine the agreement entered into between Kouchoucos and Gilliam upon which this suit is based. It is undisputed that the term for which Kouchoucos was employed as manager of the Beaumont Petroleum Club was the same term as that contained in a written contract between Kouchoucos and Ridgewood Motor Hotel, Inc. It is also undisputed that Gilliam was the builder, principal stockholder and president of the Motor Hotel Corporation. That contract was in writing, and it was introduced in evidence. The term of employment set out in its material parts in that contract is:

"The term of this contract and agreement shall be for a period of ten years from the date of completion of the premises * * * .

---

*—All emphasis mine unless otherwise indicated.

"No sale or change in ownership of the premises shall affect this contract and agreement; such sale or change of ownership shall be subject to this contract and agreement. *This contract and agreement shall, however, terminate on the death of the Operator,* and any further operation by his heirs, assigns or successors shall be under a re-negotiated contract."

In my opinion, this clearly shows that the parties intended that the contract would be "performed," "come to an end," or "terminate" upon the death of Mike Kouchoucos. This is the crucial provision which take our contract out of the Statute of Frauds.

After stating that the term of the contract should be for a period of ten years, it provides that "this contract and agreement shall, however, terminate on the death of the Operator, and any further operation by his heirs, assigns or successors shall be *under a re-negotiated contract.*" The first promise of the contract is that it shall be for a term of ten years, but, in the alternative, the contract is at an end and fully performed "on the death of the Operator." To emphasize that the obligations under the contract shall be considered performed upon the death of the operator, the agreement specifically provides "any further operation by his [the operator's] heirs, assigns or successors shall be under a re-negotiated contract." This language shows the contract to be at an end and the operator has discharged all his obligations thereunder, and full and complete performance of the contract would be had upon the death of Kouchoucos. The very contingency which the parties agreed in their contract should fulfill it might have happened within one year; therefore, the contract is not within the terms of the Statute of Frauds.

In the Chevalier case, this court was careful to point out early in the opinion that the "employment period was fixed in calendar terms, * * * and contained no reference to possible death of plaintiff, or other contingency that might prematurely terminate the arrangement." In discussing the case of Weatherford, Mineral Wells & Northwestern Railway Company v. Wood, 88 Texas 191, 30 S.W. 859, 28 L.R.A. 526, in the Chevalier case, this court, among other things, said:

"* * * This Court held that since the arrangement was personal to plaintiff Wood or to him and his family, and would necessarily terminate on their death, which could have occurred within a year from the making of the agreement, the latter

was not one 'not to be performed within the space of one year * * *', *regardless of whether the parties ever had the possibility of death in mind. * * *.*"

And further, in the Chevalier case, this court said:

"*\* \* \* For example, an agreement to sell the output of a factory for two years may well be* avoided *on destruction of the factory within six months, but is it 'performed'? On the other hand, if A* agrees *to work for B for the term of A's life* or until the happening of some other fortuitous event, *and does so work until the event occurs, A may accurately be said to have 'performed.'* Upon the basis of this distinction, it has been held *in many jurisdictions that, while* an agreement such as that last mentioned is not subject to the Statute, *an agreement to work for a definite period of more than one year from the contract date, as in the instant case, is within the Statute. * * \*\*.*"

The Court then proceeds to declare the rule governing the determination of whether or not oral contract of employment comes within the Statute of Frauds, and says:

"*\* \* \*\* We accordingly restate the rule so that where, by the terms of the oral agreement, its period is to extend beyond a year from the date of its making, the mere possibility of its termination* by operation of law within the year, *because of death or other fortuitous event, does not render paragraph 5 of the Statute inapplicable, but that, on the other hand, where the agreement may, by its own terms, be fully performed within the year, as, for example, the agreement in Wright v. Donau-bauer, 137 Texas 473, 154 S.W. 2d 637, for employment during the term of a man's life, the Statute does not apply. By the foregoing we necessarily approve the above-mentioned line of authority represented by Paschall v. Anderson, [127 Texas 251, 91 S.W. 2d 1050] and overrule the line represented by Weather-ford, Mineral Wells & Northwestern Railway Company v. Wood, [88 Texas 191, 30 S.W. 859, 28 L.R.A. 526], and Great Atlantic & Pacific Tea Co. v. Warren, [Texas Civ. App., 44 S.W. 2d 510]. We also take occasion here to reaffirm our holding in Wright v. Donabauer, supra, though it was not immediately involved in the conflicts above discussed.*"

In Wright v. Donaubauer, 137 Texas 473, 154 S.W. 2d 637, expressly reaffirmed by this court in the Chevalier case, we find the following:

*"By the terms of the contract,* same would be terminated by the death of Leonards, which might have occurred at any time after the making of the contract. This contingency might have happened in less than a year after making of the contract, and on its happening would have terminated the contract. To condemn a contract as violating the Statute of Frauds, it must appear from the agreement itself that it is not to be performed within a year after its execution. This contract carries no such provision. Therefore such contract, under the decisions of this court did not violate Section 5 of Article 3995, R.C.S., 1925 * * *," citing authorities.

Here again, whether or not the contract is within the statute depends upon the agreement of the parties. There can be no doubt that where the agreement is silent as to a means or method of performing the contract within one year, the contract is within the statute. Such cases are Moody v. Jones, Texas Civ. App., 37 S.W. 379; Paschall v. Anderson, 127 Texas 251, 91 S.W. 2d 1050; San Antonio Light Publishing Co. v. Moore, Texas Civ. App., 101 S.W. 867; Jackman v. Anheuser-Busch, Inc., Texas Civ. App., 162 S.W. 2d 744, wr. ref.

I recognize that a mere defeasance or cancellation provision which may occur within the period of one year does not take the agreement out of the Statute of Frauds. Williston *On Contracts,* 3rd Ed.,, Vol. 3, p. 594, section 498A. However, the same author says at p. 591, *id.,* "the distinction between completion of performance and an excuse for non-performance, previously adverted to is made in contracts where the promise is in the alternative and in agreements subject to a right of cancellation or defeasance. The courts recognize a distinct difference between a contingency which fulfills the terms of the contract and a defeasance which prevents fulfillment. Where the promise is in the alternative, the contract is not within the statute if either alternative can be performed within a year from the date when the contract is made even though the other cannot be so performed."

The leading case in the United States discussing the Statute of Frauds is Warner v. Texas & Pacific R. Co., 164 U.S. 418, 41 L. Ed. 495, 17 S. Ct. 147, which states "the Statute of Frauds plainly means an agreement *not* to be performed within the space of a year, and expressly and specifically so agreed. A *contingency* is not within it; nor any case that depends upon a contingency." (Court's emphasis.)

The case of Deevy v. Porter, et al, 11 N.J. 594, 95 A. 2d 596, construed a contract of employment containing the provision that the employees "could quit at any time." The court says (citing Wagniere v. Dunnell, 29 R.I. 580, 73 A. 309, 310) "it is established by the great weight of authority that a contract for a definite term longer than a year is not excluded from the operation of the statute of frauds *because it contains a provision enabling either party to put an end to the contract within a year;* the reasoning of the courts being that the rescission of a contract is not the performance of it."

The holding of the Court that the contract was an "option" contract which might be terminated upon the option of the employees, exercised within one year is not authority for holding our contract within the Statute of Frauds. Our contract is not an "option" contract, rather it is a contract, the performance of which depends on the happening of a contingency which may occur within a year, and is not within the statute. "* * * The contingency, it has been held, must be one that is beyond the control of both parties, and is not entirely within the control of one of the parties, * * * ." 37 C.J.S. 560, section 51. The case of Barnes v. P. & D. Manufacturing Co., 123 N.J.L. 246, 249, 8 A. 2d 388, is also not in point in our case. The very quotation set out in the majority opinion shows the contract there involved was an "option" contract, and not a contract of alternative performance, and not based upon a contingency not under the control of either party to the contract.

In Williston, *On Contracts*, 3rd. Ed., Jaeger, pp. 581-582, we find the rule stated thus: "Nor is a promise obnoxious to the statute which is performable at or until the happening of any *specified* contingency which may or may not occur within a year. 'It has been repeatedly held that, if an agreement whose performance would otherwise extend beyond a year may be completely performed within a year on the happening of some contingency, it is not within the statute of frauds,'" (citing from Carnig v. Carr, 167 Mass. 544, 46 N.E. 117, 35 L.R.A. 512). And further, on page 598, section 498B, the same text states, (quoting from Fenton v. Emblers, 3 Burrow 1278), "The statute of frauds plainly means an agreement not to be performed within the space of a year, and expressly and specifically so agreed. A contingency is not within it; *nor any case that depends on a contingency.*"

Williston, on pages 601-604, *id.*, discusses the cases which have failed to distinguish between contracts providing for an

alternative performance, and those subject to an express defeasance or cancellation. The text approves the dissent in the case of Coan v. Orsinger, 265 F. 2d 575. The contract in that case was to employ a first year law student as resident manager until the student completed his studies as a student duly matriculated in Georgetown University Law Center, Washington, D. C., or was obliged to discontinue these studies. The court held the contract within the Statute of Frauds. Williston, in criticizing this opinion, says: " * * * In so holding, the majority, of course, failed to distinguish between a discharge from liability because of a refusal to perform the first clause, and the possibly complete and timely performance of the second provision. Actually, the *promise* made by the defendant employer was to employ plaintiff [the student] as resident manager during a period of time which would not exceed the time it might take to complete the curriculum at the Law Center, or a much shorter one, if, for one reason or another, plaintiff 'was obliged to discontinue' his studies. Thus, if the *contemplated* contingency occurred within the year, it would result in the completion of plaintiff's duties as resident manager within the year, and the requirements of the statute would be satisfied."

This reasoning fits our case exactly. Here the plaintiff was employed for a period not to exceed ten years, or a much shorter period if plaintiff should die sooner than ten years. Since the contemplated contingency—death of the plaintiff—might have occurred within the year, it would result in the completion of our plaintiff's employment within the year, and the requirements of the statute would be satisfied.

To the same effect is Corbin *On Contracts*, Vol. 2, p. 541, et seq., section 445, in which he cites many, many cases. Also the same authority on p. 556, section 447, says, "* * * but in service cases it is generally recognized that termination of duty *by operation of law* is not identical with performance of a promise. The death of a party may terminate duty, but the contemplated work has not been done. *It is otherwise if the parties have themselves agreed upon the limitation as one of the terms of the agreement that created the duty.*"

This is the error of the majority opinion herein. It applies the rule whereby the contract of the parties is terminated *by operation of law* to a case where the parties themselves have agreed that the death of the plaintiff is performance. I say that the Chevalier case upholds this very distinction which the majority has overlooked. The majority nowhere cites any case or

any authority in which the parties themselves included in their contract of employment a condition of alternative performance of the contract, or a contingency over which either party had control which would fully perform the contract.

Based upon this interpretation of the Chevalier case, and my understanding of its application to our cause here, and upon study and discussion of other cases and authorities pertinent thereto, it is my opinion that the majority's holding is directly contrary to the law thus declared, and I would, therefore, affirm the Court of Civil Appeals.

Opinion delivered November 9 ,1960.

Rehearing overruled December 7, 1960.