**PAGE & WIRTZ CONSTRUCTION CO.,**
**Appellants,**

v.

**VAN DORAN BRI–TICO CO., Appellees.**

**No. 7851.**

Court of Civil Appeals of Texas.

Amarillo.

June 3, 1968.

Rehearing Denied Sept. 9, 1968.

Culton, Morgan, Britain & White, Amarillo, L. A. White, Amarillo, of counsel, for appellants.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, S. Tom Morris, Amarillo, of counsel, for appellees.

CHAPMAN, Justice.

In the trial court Van Doran Bri-Tico Co., a partnership composed of L. E. Van Doran and S. O. Garner, hereinafter called Van Doran, sued Page & Wirtz Construction Co., a partnership composed of Walter E. Wirtz, his son, Jack Wirtz, and J. C. Page,[1] for prospective profits which it alleges it would have made as subcontractors for the performance of masonry work on Units A & D of Western Plaza Shopping Center in Amarillo under general contractors Page & Wirtz, except for breach by Page & Wirtz of the subcontract.

In April, 1966, certain members of the Hedgecoke family in Amarillo doing business as partners were in the process of inviting bids for construction of two units of Western Plaza Shopping Center. Bidding of the general contractors was to be in to the Hedgecoke Estate by 2:00 P.M., May 12, 1966. Van Doran submitted its subcontractor's bid of $204,395.00 between 10:30 and 11:00 on the morning of May 12, 1966. At that hour Page & Wirtz already

---

1. The construction company will be referred to as Wirtz, Page & Wirtz or appellant.

had in its hands a masonry bid from Southwestern Bricklaying Company, which was about $9,000.00 in excess of the Van Doran bid. At approximately 1:00 P.M. on the same day Southwestern Bricklaying Company submitted another bid on the masonry work which was about $1,595.00 lower than the Van Doran bid.

Southwestern Bricklaying Company was later awarded the masonry contract and Van Doran filed this suit. The case was tried to the jury upon Special Issue No. I inquiring if Page & Wirtz "accepted" Van Doran's bid for the masonry work on Units A & D of the Western Plaza Shopping Center and on Special Issue No. II inquiring as to the amount of net profit Van Doran would have realized in reasonable probability if it had been permitted to perform such masonry work. The word "accepted" as used in the first issue was defined as an expression of assent or agreement not conditioned on acceptance of the terms of the plaintiff's bid by the Hedgecokes. To the first issue the jury answered "yes" and to the inquiry concerning the net profits Van Doran would in reasonable probability have earned they answered $25,000.00.

After submitting its bid during the forenoon of May 12, 1966, Van Doran left the offices of Page & Wirtz but was still in the building talking to Wirtz's son, Jack, when Walter E. Wirtz came out of his office and told J. C. Page to get Franklin Bottoms on the telephone immediately. The latter represents Southwestern Bricklaying Company, a competitor to Van Doran. Immediately after the statement just related Wirtz looked around and saw Van Doran, and knew he had overheard his request to get Bottoms on the telephone. Wirtz testified in the case there was an atmosphere of embarrassment because he thought Van Doran would think he was "peddling" his bid to Bottoms, knowing Van Doran had accused others of doing so in the past. Van Doran testified, " * * * I was pretty well shook up and left." However, he called Wirtz by telephone about 4:00 that

afternoon. He testified Wirtz told him, " * * * this morning I made the biggest bust I ever made in my life" and " * * * under existing conditions, I can do nothing but give you the job."

"Q. And what did you say to that?

A. Well, Walter, now, as I understand it, if you get this job, I've got a job. And he said, yes, sir."

Van Doran's written bid to Page & Wirtz provided: " * * * we guarantee our work for one year only and we do not waive our lien rights." The Hedgecoke contract with Page & Wirtz required a two-year guarantee and waiver of lien rights, together with several other conditions not included in the Van Doran subcontract masonry bid to Page & Wirtz. Wirtz admitted he used Van Doran's bid in figuring his general contractor's bid to the Hedgecoke Estate but denied awarding the subcontract to Van Doran. However, appellant admits for the purpose of this appeal, that Wirtz represented to Van Doran on May 12, 1966, that " * * * if we get the job, the masonry portion of it is your job," and told Van Doran's partner, S. O. Garner, on May 16, 1966, that he used Van Doran's bid in figuring the general contract and they could make their plans accordingly. Van Doran's trial petition alleges it entered into a contract with Page & Wirtz Construction Co. on May 16, 1966, for performance of the masonry work for the price set forth in Van Doran's bid on May 12, 1966.

Appeal is perfected upon eight points, the first contending that:

"Since the agreement between Van Doran and Wirtz left open for future negotiation material matters to be later agreed upon, no enforceable contract came into existence and no recovery against Page & Wirtz can be sustained."

Conceding without holding that there is some probative evidence to the effect that the oral contract between Van Doran and Wirtz was not conditioned on acceptance

by the Hedgecokes of the terms of the Van Doran bid, the fact still remains that Van Doran admitted throughout his testimony to numerous conditions of the contract between it and Wirtz which would have to be later negotiated. For example, Van Doran testified the requirement to waive lien rights by the subcontractor was a matter which was to be settled at a future time or in future negotiations between it and Wirtz. The same admissions were made as to the two-year guarantee in the Hedgecoke requirements, an escalator clause to apply on future work and as to the arrangement that would have to be made between Van Doran and Wirtz if the Hedgecokes refused to approve of the standard contract conditions of the American Institute of Architecture (A.I.A.). All these, and others, Van Doran admitted were conditions of the subcontract between it and Wirtz which would have to be negotiated in the future between them.

■ We have searched diligently for a case involving a controversy between a general contractor and subcontractor on questions such as those above related, but to no avail. We perceive no reason why the general rules of contract law would not apply here. One of those rules is that where any essential term of a contract is left open for future negotiations there is no binding contract.[2]

■ Another general rule of contract law is that to make a contract there must be mutual assent; that assent must comprehend the whole of the proposition; must be equal to its extent and provisions; and it must not qualify them by any new matter. Summers v. Mills, 21 Tex.Rep. 77, 78, 88 (Tex.1858); Browne Grain Co. v. Walker, 206 S.W. 859 (Tex.Civ.App.-Amarillo, 1918).

The "proposition", if the contract may be so termed, was admitted by Van Doran

to lack at least the several elements above related as constituting conditions still to be negotiated between it and Wirtz.

It is clear in the record that before Van Doran's bid was submitted the Hedgecokes were insisting on the conditions just related and Van Doran and Wirtz had discussed the fact that efforts would be made by Wirtz to secure modifications thereof to conform to Van Doran's bid.

■ Wirtz and Van Doran had discussed the harshness of the Hedgecoke requirements; both of them had expected Wirtz to obtain approval by the Hedgecokes of the Van Doran modifications (which were never accomplished), so it would have to be said that Van Doran had knowledge that such expectations might not be accomplished. When it conceded that if such expectations were not accomplished there remained conditions which would have had to be negotiated between it and Wirtz it recognized situations existed under which the contract between them was not complete. Under the footnote 2 authorities there was no binding contract between Van Doran and Wirtz as long as those essential terms were left open for future negotiations between them.

Appellee relies upon Air Technology Corp. v. General Electric Co., 347 Mass. 613, 199 N.E.2d 538 (Supreme Judicial Court of Massachusetts, 1964) for its contention that the contract between it and Wirtz was reasonably certain and definite as to its conditions and terms. The only testimony from which it could be said that a contract was entered into between them is the alleged telephone conversation above related between Van Doran and Wirtz and the testimony of S. O. Garner to the effect that Wirtz told him on May 16, 1966, that he used Van Doran's bid in figuring the general contract and they could make their plans accordingly.

In view of the several essential conditions Van Doran testified would have to be nego-

2. 17 Amer.Jur.2d, Sec. 26, P. 362; 13 T.J.2d, Sec. 14, P. 127; Hume v. Bogle, 204 S.W. 673 (Tex.Civ.App.-Austin, 1918, n. w. h.); Engelman, Inc. v. Sanders Nursery Co., 140 S.W.2d 500, 504 (Tex. Civ.App.-El Paso, 1940, writ ref'd).

tiated between his company and Wirtz we do not believe the Massachusetts case just cited is decisive to make a binding contract between them. In that case, originating in equity, AT and the general contractor, GE, were said by the Court to be associated in a limited joint venture in an effort to secure a contract from the Air Force, AT to contribute its peculiar scientific knowledge of EM sensory equipment to the "team proposal" to the Air Force in an effort by GE to secure the contract. The Court held " * * * that GE, by failing to press for AT's continuing participation in the program and by competing for the EM sensor work, committed total breaches of its duties to AT." Such holding by the Court would appear as further proof it considered the relations between AT and GE as a type of joint venture, the breach of their arrangement by GE giving rise to the recovery allowed to AT against it. The Court said: "As a consequence AT was deprived of a valuable opportunity for a part in the program." There is not even a contention of any species of joint venture in our case.

■ The Court in the Massachusetts case announced a principle of contract law which appears applicable to the facts here, even if it might be said to be dictum. It said: "A purported contract which is no more than an agreement to agree in the future on essential terms, or one which does not adequately specify essential terms, ordinarily will be unenforceable." We believe the one here is unenforceable and that appellant's first point must be sustained.

By its second point, Page & Wirtz contends the agreement upon which the Van Doran claim is predicated is unenforceable as being in violation of the Texas Statute of Frauds. As applicable to this point that statute (Art. 3995, Revised Civil Statutes, 1925) provides:

"No action shall be brought * * * in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith * * *.

* * * * * *

5. Upon any agreement which is not to be performed within the space of one year from the making thereof."

■ That statute was first enacted in Texas before the middle of the 19th century.[3] Many of the cases construing Sec. 5 here involved, grew out of oral employment contracts, and the construction thereof by the courts developed two lines of cases indistinguishable on principle[4] concerning the questions of whether (1) the oral agreements were within the prohibition of Sec. 5 of the statute, notwithstanding the possibility of termination within less than a year by reason of the plaintiff's death and (2) whether, if within the statute, the agreements were nevertheless enforceable by reason of the performances actually rendered by the plaintiff. In Chevalier v. Lane's, Inc., supra, the Supreme Court of Texas recognized the contracts in the two lines of cases compelled a re-examination and restatement of the law on the subject matter. The court overruled the cases of which Weatherford, etc., Ry. Co. v. Wood, was representative and approved the line of authorities represented by Pas-

3. Chevalier v. Lane's Inc., 147 Tex. 106, 213 S.W.2d 530, 6 A.L.R.2d 1045 (1948) (First full paragraph, P. 531).

4. Representative of one line of cases were Weatherford, M. W. and N. W. Ry. Co. v. Wood, 88 Tex. 191, 30 S.W. 859, 28 L.R.A. 526 (1895); Great Atlantic & Pacific Tea Co. v. Warren, 44 S.W.2d 510 (Tex.Civ.App.-Texarkana, 1931, writ ref'd). Conflicting therewith were such

cases as Paschall v. Anderson, 127 Tex. 251, 91 S.W.2d 1050 (Sec. A, 1936, opinion adopted); Moody v. Jones, 37 S.W. 379 (Tex.Civ.App.-Galveston, 1896); Jackman v. Anheuser-Busch, Inc., 162 S.W.2d 744 (Tex.Civ.App.-Dallas, 1942, writ ref'd); and San Antonio Light Publishing Co. v. Moore, 46 Tex.Civ.App. 259, 101 S.W. 867 (San Antonio, 1907, writ ref'd).

chall v. Anderson, supra. In so doing, it announced some general principles of law with respect to Sec. 5 of the statute which we believe are applicable to the instant case. The court said:

"We accordingly restate the rule so that where, by the terms of the oral agreement, its period is to extend beyond a year from the date of its making, the mere possibility of its termination by operation of law within the year, because of death or other fortuitous event, does not render paragraph 5 of the Statute inapplicable, but that, on the other hand, where the agreement may, by its own terms, be fully performed within the year—the statute does not apply."

■ Appellee correctly contends that if there is the slightest possibility the masonry subcontract with the guarantee thereof could be performed within one year from the making thereof, the statute does not apply, citing Hall v. Hall, 158 Tex. 95, 308 S.W.2d 12 (1957); Goodwin v. South Texas Land Sales, Inc., 243 S.W.2d 721 (Tex.Civ.App.-San Antonio, 1951, writ ref'd n. r. e.). Our Supreme Court in Hall v. Hall, supra, held: "* * * where the term of performance is uncertain in the sense that the contract merely provides for the performance of a particular act or acts, such as the building of a house, which can conceivably be performed within one year, the statute does not apply, however improbable performance within one year may be."

■ The rule stated in the alternative clause of the above quote from Chevalier v. Lane's, Inc., supra, and the quote just made from Hall v. Hall, supra, would, we believe, require us to hold the subject contract is not within the statute if the oral contract consisted only of a guarantee that the masonry work would be performed within a year. However, the bid submitted to Wirtz by Van Doran provided (1) Van Doran would perform the $204,395.00 of masonry work following the date of the alleged oral contract of May 16, 1966, and (2) it would guarantee the work for one year. Obviously the year's guarantee would not start running until after the work was completed. The year's guarantee is as much a part of the contract as the performance of the masonry work. Even if defects appeared in the completed work and were corrected in less than a year, or if no defects appeared at all, the guarantee, which we believe to be a vital part of the oral contract, still would be effective for a year from the time of the completion of the work. Therefore, the agreement of which the statute speaks could not, by its own terms, be fully performed within "* * * the space of one year from the making thereof." Van Doran's suit is not upon any instrument in writing but upon the alleged oral agreement it contends it had with Wirtz.

Our Supreme Court in Gilliam v. Kouchoucos, 161 Tex. 299, 340 S.W.2d 27, 88 A.L.R.2d 693 (1960) held with respect to Sec. 5 of the statute that it "* * * relates to a contract 'not to be performed within the space of one year from the making thereof'. It thus has application only to contracts which are terminated by performance, and does not apply to contracts which may be terminated within a year by some means other than performance." The work could have been performed within one year from the making of the contract but the agreement could not because the year's guarantee extended one year past the completion of the work. The oral agreement bears a fixed term—one year from the completion of the masonry work. In *Gilliam* our Supreme Court quoted with approval from the Supreme Court of New Jersey as follows:

"* * * on the other hand, where the oral agreement does bear a fixed term and is not to be performed within the year it is held to be within the statute even though the obligations thereunder may be terminable by operation of law well within the year; * * *."

We cannot see how the contract in our case could even be terminable by operation

of law, unless it could be said that bankruptcy or breach would result in such termination, since the guarantee of the work extended one year beyond the completion of the work. Termination by bankruptcy or breach would not take the contract out of the statute. Gilliam, supra, citing Barnes v. P. & D. Mfg. Co., 123 N.J.L. 246, 8 A.2d 388, 389. As we understand the contract it is one of which it could have truly been said at the very moment it was made, " 'This agreement is not to be performed within one year' ". Goodwin v. South Texas Land Sales, Inc., 243 S.W.2d 721 (Tex.Civ.App.-San Antonio, 1951, writ ref'd n. r. e.), i. e., this masonry work and the guarantee thereof. The only way it could have been performed in one year is to hold that the year's guarantee was not a part of the agreement. It appears to us this would be a very strained holding in view of the statute itself, which provides no action shall be brought, etc. "5. upon any *agreement* which is not to be performed within the space of one year from the making thereof." (emphasis added)

Accordingly, the judgment of the trial court is reversed and rendered.