E. L. HURT, Appellant,

v.

STANDARD OIL COMPANY OF TEXAS, Appellee.

No. 6029.

Court of Civil Appeals of Texas.

El Paso.

July 16, 1969.

Rehearing Denied Sept. 10, 1969.

OPINION

WARD, Justice.

This is an action for breach of a contract to employ the appellant permanently to age 65. Trial was to a jury, and at the conclusion of all the testimony the trial court granted the appellee's motion for an instructed verdict. We affirm the judgment of the trial court.

Appellant went to work for the appellee at its El Paso refinery in the year 1930, when he was a young man, and according to his testimony, at all times while he was employed he was encouraged by his superiors to make his employment a "lifetime work", or a "career of employment", and testified to the refinery superintendent telling him, a year or so after he went to work, that he felt that a career employee would have a job to the age of 65. According to his own testimony, his original employment was one at will, and he does not claim it changed until 1952, when appellee began inaugurating benefits for its employees in addition to those previously in existence. Company booklets and various printed brochures issued by the appellee to the appellant and other company employees stressed and encouraged the employees to make their employment a career employment. The appellant read the literature and availed himself of the benefits, and determined and decided to make his lifetime work with the company his working career, and to remain there for his entire working life and until retirement at age sixty-five.

After some 34 years of service, and when he was 54 years of age, the appellant was given early retirement on August 1, 1964, and in 1966 filed the present action alleging that his early retirement was wrongful.

Appellee's motion for instructed verdict was to the effect that none of the elements of a contract of employment to a certain age had been established, as there was no definite offer, no acceptance, and no consideration for the contract; that the evidence was to the effect that all employees were

Lipscomb, Fisk, Cox & Ehrlich, Abner Lipscomb, El Paso, for appellant.

J. F. Hulse, El Paso, for appellee. Scott, Hulse, Marshall & Feuille, El Paso, of counsel.

344

hired on an indefinite basis and not for any specified term or time; that after 1951 no corporation could hire an employee for more than a year at a time without affirmative action by the board of directors, and there is no evidence in the case showing any such action; that at the time of the termination of the employment there was an accord and satisfaction or a novation by virtue of certain payments to the appellant and certain benefits which accrued to him on his early retirement; that his acceptance of the benefits constituted an estoppel against the assertion of the appellant's claim, and that the Statute of Frauds precludes a claim of this nature.

Our view of this so-called contract of employment until the age of 65 is that it is within the terms of the Statute of Frauds; that any written memoranda relied on to constitute a claim of permanent employment until the age of 65 must be interpreted together, as a whole, and that they do not constitute any such offer on the company's part; and, finally, that there has been an effective waiver and estoppel on the part of the appellant in this case. This precludes any necessity to discuss the many other aspects of the case as raised in the appellee's motion for an instructed verdict which was granted by the trial court.

■ It is the appellant's position that there was a contract of employment, either express or implied, made in 1952 between the parties where, as a career employee, he would have employment until his retirement age when he became 65. The question for our first determination is whether or not this contract is within the terms of the Statute of Frauds, Section 5, Article 3995, Revised Civil Statutes of Texas; and we hold that the contract relied on is within the Statute, as it could not have been performed within one year from the date of its making. At that time, in 1952, the appellant was 42 years of age and his retirement, at age 65, would have taken place in the year 1975. We are thus confronted at the start with the two questions present-

ed to the Supreme Court in the case of Chevalier v. Lane's, Inc., 147 Tex. 106, 213 S.W.2d 530, 6 A.L.R.2d 1045: "* * * First, whether the agreement is within the prohibition of the statute, notwithstanding the possibility of termination within less than a year by reason of plaintiff's death, which would obviously render further performance of such an agreement impossible; and, secondly, whether, if within the statute, the agreement is nevertheless enforceable by reason of the performance actually rendered by the plaintiff". As the answer to the first question, the court resolved the conflicts then existing in the state to the majority rule in this country, and held the following:

"* * * We accordingly restate the rule so that where, by the terms of the oral agreement, its period is to extend beyond a year from the date of its making, the mere possibility of its termination by operation of law within the year, because of death or other fortuitous event, does not render paragraph 5 of the Statute inapplicable, but that, on the other hand, where the agreement may, by its own terms, be fully performed within the year, as, for example, the agreement in Wright v. Donaubauer, 137 Tex. 473, 154 S.W.2d 637, for employment during the term of a man's life, the Statute does not apply."

The court also held that the agreement was not enforceable by reason of the performance there actually rendered by the plaintiff.

■ Hall v. Hall, 158 Tex. 95, 308 S.W. 2d 12, was a case based upon an implied contract for a reasonable period of time which was found by the jury to be three years, and is also authority for our present position. In the present case the appellant alleges and proves that the contract was one of permanent employment to age 65. Since the finding of an implied contract for a reasonable time, to-wit, three years, is within the Statute of Frauds, as in the Hall case, it would seem that the pleading

and proof of an implied contract for a term lasting from 1952, at age 42, until the appellant would be 65 years of age in 1975, is likewise within the Statute. As said in Hall, the basic question is how long, in units of time, performance under the contract was to last and any reasonably clear method of ascertaining this fact could properly be used. The only reasonably clear method of ascertaining the answer in the present case is one based on the age of the appellant; he entered a contract that would terminate in 1975.

Gilliam v. Kouchoucos, 161 Tex. 299, 340 S.W.2d 27, 88 A.L.R.2d 693, is additional authority for our present position. There, the oral contract of employment was to continue for a term of ten years, but the contract specifically provided that it would be terminated on the death of the plaintiff. This, too, was held to be within the terms of the Statute. The Supreme Court there said that the contract of employment is for a term of 10 years; that the Statute thus has application only to contracts which are terminated by performance, and does not apply to contracts which may be terminated within a year by some means other than performance. All personal service contracts are terminated by death. The addition of the words, "But the agreement shall terminate on the death of the operator" added nothing. The performance in our case is as a career operator until retirement at age 65. The excuse for nonperformance is the possible death of the appellant in our case, and this seems to be clearly condemned by the Supreme Court cases above. " * * * where the agreement may, by its own terms, be fully 'performed' within the year, as, for example, the agreement in Wright v. Donaubauer * * * for employment during the term of a man's life, the statute does not apply. * * * " But how can this agreement, by any stretch of the imagination, be performed in one year when the man is 42 years old? This case is simply one of a promise to serve 23 years as condemned in the Gilliam case.

■ Likewise, in the present case, there is no equitable basis for refusing to apply the Statute. The appellant has been paid to the date of his severance from the company, and so admits it. Under the authorities above cited, as well as Jackman v. Anheuser-Busch, Tex.Civ.App., 162 S.W.2d 744 (wr. ref.), the statute is applied.

■ Now, can the written memoranda relied upon by the appellant satisfy the statute? Primarily, the appellant relies on a Stock Plan distributed by the company to its employees in 1952, by which employees were able to buy stock in the company and the company would buy stock also. The plaintiff studied the plan, felt that it was a good one, and joined the same. The following provisions are taken from this plan:

"The purposes of the Plan are to provide incentive and promote greater teamwork and efficiency by giving employees a direct share in the profits of the Company, to encourage employees to acquire an equity interest in the Company by becoming stockholders, and to attract and retain capable employees by making the benefits under the Plan primarily available to those employees who make a career of Company service. The Plan provides that both employees and the Company make contributions to the Plan. Such funds will be invested in the capital stock of the Company to be held by the Trustee until paid to employees upon their leaving Company service * * * "
"This booklet describes a Stock Plan under which Standard Oilers who make a career of Company service may share directly in the financial results of the Company's operations. The purpose of this Plan is to provide you with the means of creating an estate for additional income after retirement, or for any other uses which you may have in mind. Because it is a plan for career people, membership eligibility has been set at 5 years of service and 35 years of age."

The appellant had also received a booklet, "You and Your Company", which contains the following:

"If you're just starting out a career, retirement may seem a long way off. In one sense it is, but every career must come to an end some day and it's comforting to know that when retirement does come, you won't be caught short. In our company, normal retirement age is sixty-five, but you may retire earlier if you wish * * *"

Other portions refer to "career employment of men and women who stay with us until retirement". Then the following is contained in the last booklet:

"Your service is considered 'continuous' unless interrupted by your resigning or retiring, failing to report back on the job immediately after a leave of absence, or leaving the Company for any other reason including layoff because of lack of work * * *"

"We'd like to print this section in very small type. The subject isn't a pleasant one for either you or the Company. But, even though we hope we'll never have to say goodbye, there are a few things you'd probably like to know about how resignations and discharges are handled * * *"

The stock plan in question fully vested in members whose service terminated upon or after reaching sixty years of age, but prior to age sixty there were certain restrictions placed on the plan as to the portion contributed by the company that would be received by the employee. Other literature delivered by the company to the appellant refers to career employees and, without repeating in full, contain the following statements: "The insurance terminates the date you leave the service of a designated company, are dismissed, retire, or otherwise cease to be on the payroll of a designated employer as a regular employee"; "This Plan does not give you any right to be retained in the service as an employee of a designated company * * *" "Your eligibility terminates on retirement under your employing company's annuity plan, suspension of service, resignation, layoff for lack of work, discharge * * *"; "If your employment terminates for any reason other than death, normal retirement, early retirement after 25 years of service, or special retirement * * *".

While the testimony is in dispute as to the reason for the appellant's forced retirement, we accept the appellant's version which, in sum and substance, was to the effect that there was a reorganization which was merely to get rid of some of the elderly employees at the refinery, as he was a good employee and had been over the years; that he had held some fifteen different jobs at the plant and had risen to a supervisory capacity at the plant. However, nowhere in the written material above referred to is there any offer of permanent employment until age 65. Before the series of literature in 1952, the appellant admitted that he was employed on an at will basis. In the offer of the written material, there is obviously no statement as to the type of work to be performed, the wages to be paid, etc. The basic offer is not directed toward keeping the employees by a contractual obligation to work for the company to age 65, but it is designed to retain them on the employee's own volition by giving them an interest in the profits and other benefits. The facts here are similar to the contract discussed by Justice Smith, in Hall v. Hall, supra. This proof is to the effect that the arrangement as made was to be terminable at will. If the appellant is to rely on the statements and material as a memorandum of the contract, he cannot, at the same time, discard the parts that are unfavorable to him and are of equal dignity and genuineness with the part on which he relies. Moreover, none of the documents are shown to have been signed or to have been part of any signed document.

■ Finally, by the undisputed evidence in the case, there has been an ef-

fective waiver and estoppel. The appellant was not happy about the early retirement and claims that he acted under economic duress in accepting his retirement. But the undisputed facts remain that it was agreed to, and that he did receive the following benefits: (1) severance pay in the sum of $28,040.00 in cash, $12,040.00 being payable at severance, and $8,000.00 in January 1965 and $8,000.00 in January 1966, all of which has been paid to and received by the appellant; (2) a monthly annuity in the sum of $152.00, paid to and received by the appellant from his retirement to date of trial; (3) under the Stock Plan, he obtained all of the stock represented by his own contributions to the plan, and 35% of the Company's contribution, together with a check of $229.88 to close out the stock account; (4) he received certain life insurance and certain group life insurance, both under Company plans, one being carried by the Company for him without any cost to him, and the other costing him the same premium as it cost him before he retired; (5) a medical insurance plan for him and his dependents under age 65, to be carried for him on the same basis as it was before retirement. All of the benefits have been paid to, or carried in full for, the appellant up to the time of trial. The monthly annuity was pursuant to a written election of the type of annuity he was to receive and was signed by the appellant at the time of his severance. The severance pay in cash in the sum of $28,040.00 was made pursuant to a voluntary company policy, and not by virtue of any contractual right or legal obligation. We feel that the case of Allen v. Dempster Mill Mfg. Co., Tex.Civ.App., 402 S.W.2d 809 (ref. n. r. e.), is directly in point. There, as here, the appellee pleaded that appellant was estopped to contend he was not retired. There, as here, he received and accepted the monthly retirement checks. Here, more strongly, we have the other substantial benefits. There, he waived his right to recover his salary; and here, we hold he waived his right to recover damages for loss of wages as a matter of law. The evidence is undis-

puted as to these material facts, and waiver and estoppel are established as a matter of law. The appellant testified, as to his retirement, that he had no choice in the matter. He did not want to retire, complained bitterly about it, but was told by the company that "This is it. Don't argue." While he was not given any choice about early retirement, nowhere in the testimony was he compelled to accept the listed benefits against his will. He could have refused the benefits and instituted his suit. There was certainly no compulsion which, in effect, substituted the will of the appellee for the will of the appellant in accepting these benefits over a period of nearly two years before filing the present action.

On the points discussed, the trial court was correct in instructing a verdict for the appellee.

The judgment of the trial court is affirmed.