CALEMKIAR S. CARNIG *vs.* MARTIN W. CARR.

Suffolk.    January 14, 1897. — February 24, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Contract — " Permanent Employment " — Statute of Frauds — Restraint of Trade — Pleading — Law and Fact.*

In an action for breach of an oral contract of employment, there was evidence tending to show that the defendant agreed that, if the plaintiff would give up his business, which was that of an enameller, and enter his service in the same occupation, he would furnish him with "permanent employment" at stipulated wages; and that the plaintiff gave up his business and entered the defendant's employ and continued therein several months, receiving wages at the rate agreed, when the defendant suspended his employment and finally ceased altogether to employ him, although he had work of the kind which the plaintiff was to do.    *Held*, that the contract was sufficiently definite to be capable of enforcement; and that it was not within the statute of frauds.

A contract to give up one's business and enter the service of another, who agrees to give him "permanent employment" in the same occupation, is not unlawful as being in restraint of trade.

Where the declaration in an action is not demurred to, although the answer raises certain objections to it, the defendant is not entitled, at the close of the evidence, to have the jury instructed that the action cannot be maintained on the declaration, if it is not fatally defective.

Whether an oral contract of employment was waived or annulled is rightly submitted to the jury, as a question of fact, in an action for breach of the contract.

CONTRACT, or tort, in three counts, alleged to be for the same cause of action. The first count, as amended, alleged that on or about November 1, 1893, the plaintiff was engaged in business for himself in Boston as an enameller, and made a contract with the defendant, by which the plaintiff agreed to give up his business and sell his stock in trade to the defendant, and, in consideration thereof, the defendant agreed to employ the plaintiff permanently at a salary of eighteen dollars per week as an enameller and engraver in the defendant's business; that the plaintiff accordingly gave up his business, and sold his stock in trade to the defendant, and entered his employ, and faithfully performed the work required of him under the contract as enameller and engraver, and was and has always been willing to perform his work and to comply with the terms of the contract; but that on or about May 1, 1894, the defendant wrongfully and without cause discharged the plaintiff from his employment, and neglected and refused to employ him thereafter, or to pay the sum of eighteen dollars per week, although the plaintiff on and after May 1, 1894, from time to time tendered his services to the defendant, and was willing to comply with the terms of the contract, whereby he was prevented from obtaining other employment for a long time thereafter, and was greatly damaged.

The second count, as amended, after repeating the allegations of the first count as to the making of the contract and its performance by the plaintiff, and his willingness to comply with its terms, alleged that on or about May 1, 1894, the defendant represented to the plaintiff that he should not need his services any longer, because he was about to move his place of business, but that after a short time he should again need his services, and would employ him in accordance with the contract; that the

plaintiff, believing the representations of the defendant to be true, and not knowing to the contrary, was induced thereby to refrain from seeking employment elsewhere for a long time; that the representations of the defendant were false, which the defendant well knew; and that the defendant had need at that time of the services of an engraver and enameller in his business, and shortly after May 1, 1894, employed another person at a smaller salary to do the work before done by the plaintiff under the contract, whereby, in consequence of the defendant's false representations and of his breach of the contract, the plaintiff was prevented for a long time from obtaining permanent employment, and was otherwise greatly damaged.

By a further amendment a third count was added to the declaration, repeating in substance the allegations of the other counts.

At the trial in the Superior Court, before *Richardson,* J., the defendant requested the judge, at the close of the evidence, to instruct the jury, among other things, that the action could not be maintained on the declaration; but the judge refused so to do.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.    The facts appear in the opinion.

*E. G. McInnes,* for the defendant.

*S. L. Whipple,* ( *W. R. Sears* with him,) for the plaintiff.

MORTON, J.    There was evidence tending to show that the defendant agreed that, if the plaintiff would give up his business, which was that of an enameller, and enter his service in the same occupation, he would furnish him with permanent employment at stipulated wages; that the plaintiff gave up his business, and entered the defendant's employment and continued therein several months, receiving wages at the rate agreed, when the defendant suspended his employment, and finally ceased altogether to employ him, though he had work of the kind which the plaintiff was to do.

The defendant contends that the contract is too indefinite to be capable of enforcement; that it is within the statute of frauds; that the plaintiff's agreement to give up his business was unlawful, and therefore the contract is void for want of consideration; and that the action cannot be maintained on the declaration.

To ascertain what the parties intended by "permanent employment," it is necessary to consider the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words would be commonly understood. For it fairly may be assumed that the parties used and understood them in that sense. *Schuylkill Navigation Co.* v. *Moore*, 2 Whart. 477, 491. Looking at the matter in that way, we think that the words would be commonly understood as meaning that, so long as the defendant was engaged in enamelling and had work which the plaintiff could do and desired to do, and so long as the plaintiff was able to do his work satisfactorily, the defendant would employ him, and that in that sense the employment would be permanent; that is, the plaintiff would be under no necessity of looking for work elsewhere, but could rely on the arrangement thus made. So construed, the contract would be capable of enforcement, and there would be no want of mutuality because the plaintiff might not have bound himself to continue in the defendant's employment. The construction contended for by the defendant, namely, that it was for him to say whether he needed the plaintiff's services or not, would put the plaintiff entirely at the defendant's mercy, and, in view of the fact that the plaintiff was to give up his business to enter the defendant's employment, would be such an agreement as he could not reasonably have been expected to make. See *Russell* v. *Allerton*, 108 N. Y. 288. On the other hand, it would be equally unreasonable to hold that the defendant could have intended to bind himself to employ the plaintiff so long as they both lived, regardless of his continuing in the enamelling business, or of the plaintiff rendering satisfactory service. The plaintiff does not indeed contend for such a construction. If it is difficult, as the defendant insists that it is, to lay down a rule for estimating the damages arising from the breach of such a contract as we have construed this to be, the difficulty is no greater than exists in many other cases, and does not present an insuperable objection to recovery.

The construction which we have given to the contract disposes of the defence of the statute of frauds. It has been repeatedly held that, if an agreement whose performance would

otherwise extend beyond a year may be completely performed within a year on the happening of some contingency, it is not within the statute of frauds. *Peters* v. *Westborough*, 19 Pick. 364. *Lyon* v. *King*, 11 Met. 411. *Worthy* v. *Jones*, 11 Gray, 168. *Doyle* v. *Dixon*, 97 Mass. 208. *Somerby* v. *Buntin*, 118 Mass. 279. *Bartlett* v. *Mystic River Co.* 151 Mass. 433. *McGregor* v. *McGregor*, 21 Q. B. D. 424. In this case, to say nothing of other contingencies, the contract would have been completely performed if the defendant had ceased to carry on business within a year.

The contract did not impose an unlimited restraint upon the plaintiff, but at most only restrained him from engaging in business so long as he continued in the employment of the defendant. There was nothing unlawful or against public policy in such a contract. *Morse Twist Drill & Machine Co.* v. *Morse*, 103 Mass. 73.

The defendant did not demur to the declaration, and, although his answer raised certain objections to it, he seems to have been content to go to trial on it as it stood. He does not claim that he was misled by it as to the real nature of the plaintiff's demand, and we do not think that the declaration was so fatally defective as to require the court to instruct the jury that at the stage of the case at which the request was presented the action could not be maintained. *Moor* v. *Boswell*, 5 Mass. 306. *Haverhill Loan & Fund Association* v. *Cronin*, 4 Allen, 141.

Whether the contract was waived or annulled was properly submitted by the court to the jury, and decided by them adversely to the defendant. It was a question of fact for them to decide.

*Exceptions overruled.*