WILLIAM H. DANIELL *vs.* BOSTON AND MAINE RAILROAD.

Hampden.  September 22, 1903. — October 30, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Contract*, Performance and breach, Damages.

In an action against a railroad company for wrongfully discharging the plaintiff from its employ, it appeared, that the defendant by a contract made in Vermont agreed to employ the plaintiff as station agent at a certain station in Vermont so long as he should perform the duties of the place in a thorough, honest and businesslike manner, and that by the law of Vermont if a superintendent, having authority to do so, allowed a delinquent employee to continue in the employ of the company subject to certain discipline, such action waived the company's right to discharge the employee for any breach of duty that already had occurred. It further appeared, that after the plaintiff had been delinquent in his duty as telegraph operator at the station, the defendant's superintendent wrote to him as follows: "While I should not wish to apply discipline against you on account of it if it was the first case of this kind, must do so in view of the frequent trouble we have with your office in connection with telegraphing and you must if you wish to remain there so conduct the office as to avoid these complaints." The discipline referred to was a system of demerit marks. *Held*, that the defendant elected not to discharge the plaintiff for the breach of duty referred to in the letter of the superintendent, although it did not waive its right

to take his delinquencies into account in connection with any future breach of duty on his part.

In an action against a railroad company for alleged breach of an agreement to employ the defendant as station agent at a certain station, so long as he should perform the duties of the place in a thorough, honest and businesslike manner, a letter of the plaintiff, relied upon by the defendant to justify his discharge, contained the following: "I am ready to step out for thirty days if you will send a man to relieve me. . . . Will you please send man to commence June 16." *Held*, that, upon the facts appearing in the case, the passage quoted was not a notice of a refusal to act as station master for thirty days after June 16, but was merely a statement that the plaintiff was ready to "step out" in case the defendant would send a man to relieve him for those thirty days, and a request that the thirty days should begin on June 16, and that it did not constitute a repudiation of the contract on the part of the plaintiff or an absolute refusal to perform his obligations under it, which would justify the defendant in discharging him, even if such a notice of intended future action, however construed, would justify an immediate discharge.

An agreement by a railroad company, to employ a person as station agent at a certain station so long as he performs the duties of the place in a thorough, honest and businesslike manner, may entitle the employee thereunder to substantial damages in case of his wrongful discharge.

LORING, J.  This is an action for breach of a written contract, dated May 29, 1891, whereby the defendant agreed, in settlement of claims which the plaintiff had against it for personal injuries while in its employ as freight brakeman and freight conductor, to employ him as station agent at its station in Fairlee, Vermont, so long as he should perform the duties of the place in a thorough, honest and businesslike manner.  The plaintiff began work as station agent at Fairlee on June 10, 1891, and was discharged on June 16, 1898.  The defendant justified the discharge on the ground that he had been guilty of a number of shortcomings extending over nearly the whole of the period of his service.  The case was sent to an auditor.  It afterwards came on for trial before a jury.  The jury were unable to agree, whereupon the judge directed them to find a verdict for the defendant, and the case comes here on an exception to that ruling. In submitting the case to the jury the presiding judge ruled that if the plaintiff was entitled to recover they could give him nominal damages only.

We are of opinion that the judge was wrong in directing a verdict for the defendant.

The contract sued on was made in Vermont and was to be performed in Vermont.  The law of Vermont is the law which

must be looked to in determining what would justify the defendant in discharging the plaintiff. The particular question of law which is material here is how far the defendant corporation waived its right to discharge the plaintiff for a breach of duty by electing not to do so after the breach of duty came to its knowledge. A witness who was duly qualified to testify to the law of Vermont was asked this question: " Supposing the railroad company were informed of the dereliction of duty of the employee, and the railroad company, through its proper officer, having charge of that employee, wrote to that employee, ' we shall have to submit to the general superintendent the question whether a certain process of discipline will be sufficient to meet this case,' and we will suppose, after the matter was submitted to the superintendent, it was decided that a process of discipline would be sufficient, and the employee would be allowed to continue, would you not say that the railroad company had waived its right to discharge the employee for any preceding breach ? " To this he replied, " I should say they had, if nothing further occurs, but if something further of the same kind occurs, they would have that additional cause." The auditor found " such to be the law in the State of Vermont."

The auditor's report was put in evidence at the trial, and no evidence was introduced there to contradict or control this finding of fact.

The last breach of duty on the plaintiff's part prior to the letter of June 4, which the defendant relies on in connection with the plaintiff's previous shortcomings as a justification for discharging him, was in connection with the plaintiff's duty as telegraph operator at the station in question. The defendant was under a contract with the Western Union Telegraph Company to furnish a competent and reliable man to do their work, to be paid by the telegraph company.

On May 28, the defendant asked the plaintiff for an explanation of a delay in a message held at White River Junction from 2 P. M. May 26, until 8.05 A. M. of May 27, " on account of that office being unable to raise you." The plaintiff's explanation was that he was away on that day and his man might have plugged the telegraph instrument while talking over the telephone and have forgotten to take it out when he got through speaking on

the telephone.   On June 3, the defendant's superintendent Folsom wrote to the plaintiff acknowledging receipt of his letter of explanation, and after stating the facts wrote :  " While I should not wish to apply discipline against you on account of it if it was the first case of this kind, must do so in view of the frequent trouble we have with your office in connection with telegraphing, and you must if you wish to remain there so conduct the office as to avoid these complaints."   It was found by the auditor that " in 1897 a system of discipline marks, as it was called, was adopted by the defendant, by which was meant that in case of any failure on the part of an employee to properly perform duties required of him, certain discipline or demerit marks were put down against his name, on a record book kept in the office of the division superintendent."

We are of opinion that the plaintiff is right in his position that the defendant elected not to discharge the plaintiff for the breach of duty in connection with the despatch of May 26, and the question arises whether the letter of June 4 was a breach of duty on the part of the plaintiff which, taken with the previous shortcomings for which the defendant had elected not to discharge him, justified his discharge under the law of Vermont.

The defendant has argued that under the findings of the auditor the question for the jury was whether the letter of June 4, taken in connection with the previous delinquencies for which discipline marks were imposed, justified the defendant in discharging the plaintiff.   The finding relied on here is that matters for which discipline marks were applied were not waived.   But this and the preceding finding." that until the use of discipline marks, the defendant, by continuing to employ the plaintiff after knowledge of his delinquencies, waived the same," are conclusions of law and are inaccurate, if not wrong.   By continuing to employ the plaintiff after knowledge of his delinquencies, whether before or after the use of discipline marks, the defendant elected not to discharge the plaintiff for those shortcomings but, as matters to be taken into account in case of a subsequent breach of duty, they were not waived.   By continuing to employ the plaintiff after knowledge of a breach of duty the defendant waived its right to discharge him for that, but it did not waive the breach of duty, and in case of a subsequent shortcoming on the plain-

tiff's part the defendant had a right to take the plaintiff's whole record into account.

The question therefore arises whether the letter of June 4, alone or in connection with prior shortcomings of the plaintiff, justified the defendant in discharging him; and we are of opinion that it did not.

On June 4 the plaintiff wrote to the defendant this letter:

"Fairlee, Vt. June 4 8.   H. E. Folsom, Supt.   Lyndonville, Vt.   Dear Sir: — I think you ask to much for $30.00.   I am ready to step out for 30 days if you will send a man to relieve me.   There can no man do the R. R. Co's work & live for $30.00 here.   I have tried to explain to you the additional business this station is doing, since I first took it, you agreed to deal with me fairly as to increase of compensation, as business materially increased.   You have declined to do this, now I will take the matter up with some one else.   You know & I know this station should pay not less than $45.00.   Will you please send man to commence June 16.   Yours, W. H. Daniell."

To understand this letter and give it its proper construction it becomes necessary to state that there was the following provision in the contract sued on: "in case of an increase or decrease of wages of station agents through the whole Passumpsic Division of said road, the compensation above named shall be subject to the same, and in case the business at said station should materially increase, said Daniell shall be fairly treated as to increase in compensation."   There was evidence at the trial that the business at Fairlee had increased forty per cent and that beginning with a letter from the plaintiff to superintendent Folsom, dated December 31, the plaintiff had insisted that he was entitled to have his wages of $30 a month increased to $45 a month.   This was refused by Folsom because there had been an increase in the work of other agents on the same division without an increase of pay.   Six letters were written back and forth on the subject, between December 31, 1897, and January 27, 1898.   Then the matter seems to have been dropped until May 25, 1898, when the plaintiff wrote to Folsom a letter which was not put in evidence but which Folsom answered on June 3, as follows: "I cannot consent to any increase in the way of an additional man at your station before July 1st, but will then consider it."   The

plaintiff also testified that before he received an answer to his letter of June 4 he wrote to Folsom on June 10 as follows : " If you consent to allow me to be absent for 30 days commencing June 16 will you kindly send me pass for Boston & return for myself & wife. I had ought to get quite well rested by that time." Under date of June 9, Folsom wrote that he would relieve the plaintiff of the station on June 16. On receipt of this the plaintiff wrote on June 11 that his request was " only for 30 days that I may get rested. Am nearly sick enough and have been some time, to be confined to the house. Please let me hear from you." To this Folsom answered that " In view of the record of discipline against you, taken with your letter of the 4th inst., I decide to make the change permanent."

The tone of the letter of June 4 is not all that it should be, but it cannot be taken to be so wanting in respect as to be an act of insubordination having the discipline of the railroad in mind, and it seems to us that it is only as such that this letter could be argued to be a breach of duty. It may well be that the plaintiff was sincere in thinking that he was entitled to an increase of pay, and the tone of the letter may be explained although not justified by the fact that the superintendent's refusal to give the plaintiff an additional man and his imposition of discipline marks for the delay of the telegraphic message on May 27 were received by the plaintiff on the same day. The defendant has made no argument on this point and we take up the only arguments which it occurs to us can be put forward in its support.

It is not necessary to consider whether under the rule of *Daniels* v. *Newton*, 114 Mass. 530, and *Ballou* v. *Billings*, 136 Mass. 307, the defendant could have rescinded the contract had the plaintiff's letter of June 4 been a notification of his refusal to work for thirty days after June 16, (which we assume would have been a breach of the contract, *Johnson* v. *Walker*, 155 Mass. 253,) and whether, in case the defendant had a right of rescission, the plaintiff had a right to retract his notice by the subsequent letter of June 9, which he testified was written before Folsom's letter of June 10 was received. In our opinion the letter of June 4 was not such a notification. In the letter of June 4 the plaintiff wrote : " I am ready to step out for 30 days if you will send a man to relieve me," and " Will you please send man to com-

mence June 16." That is not a notice of refusal to act as station master for thirty days after June 16. It goes no farther than a statement that he is "ready to step out" in case the defendant will send a man to relieve him for those thirty days, and a request that the thirty days begin June 16. It cannot be held to be an absolute repudiation of the contract on the part of the plaintiff or an absolute refusal on his part to perform his obligation under it which would entitle the defendant to discharge him, assuming that the defendant on such a notification would have been entitled to discharge him finally at that time, on which we express no opinion.

The only contention made by the defendant in support of the ruling that nominal damages only could be recovered is that the elements of damage are too uncertain, and it relies on the case of *Bolles* v. *Sachs*, 37 Minn. 315. But the case of *Carnig* v. *Carr*, 167 Mass. 544, decides that they are not. The contract in question in *Carnig* v. *Carr*, as in the case at bar, was a contract where the plaintiff had the option of continuing in the defendant's employ or not. It was held that it was enough that the defendant agreed to give him permanent employment if he wished it. The plaintiff had a right to permanent employment and is entitled to damages for being deprived of that right. See also *Johnson* v. *Walker*, 155 Mass. 253.

Evidence of the probable length of life of a man of the plaintiff's age might be relevant on the question of damages. But the question was not how long the plaintiff would be able to breathe but how long he would be able to work, and by the terms of the contract his employment was not so long as he could work but so long as he should perform the duties of the place in a thorough, honest and businesslike manner.

Evidence of the plaintiff's income from the railroad, the express company, the telegraph company and from his outside business during the last year prior to his discharge and his income during the first year after, was offered and excluded. Under the decision that the defendant elected not to discharge the plaintiff for his derelictions of duty, if it was found that he had been derelict, the question of the admissibility of this evidence will not come up again as it did at the trial under consideration, and the question raised by this exception need not be discussed now.

.The other questions of evidence argued are not likely to arise in precisely the same way, and need not be passed upon.

*Exceptions sustained.*

*J. B. Carroll & W. H. McClintock,* for the plaintiff.
*W. H. Brooks & W. Hamilton,* for the defendant.