## FLETCHER v. AGAR MFG. CORPORATION.
### No. 961.

District Court, W. D. Missouri, W. D.
June 9, 1942.

Ryland, Stinson, Mag & Thomson, of Kansas City, Mo., for plaintiff.

Edwin S. McAnany, of Kansas City, Kan., and Lathrop, Crane, Reynolds Sawyer & Mersereau, of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is a suit for damages upon the breach of an alleged contract of life em-

ployment. Under the authority of Rule 50 of the New Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the court reserved decision on motion of the defendant for a directed verdict at the close of all the evidence. The jury having failed to agree, the defendant has moved for a directed verdict as was and is its right under said rule. The following language is apposite: " * * * or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. * * *"

The bases of said motion, both urged at the trial and now, are: (a) The alleged contract was ultra vires; (b) it lacked mutuality; (c) there was no special consideration for the alleged contract of life employment, and (d) the alleged contract, if made, was not so made by any one having authority from the defendant.

These will be noticed and discussed.

1. On the question of ultra vires the defendant pleaded a limitation within the charter of defendant upon the power of its officers to enter into long time contracts of employment. This was rather in the nature of a bylaw and regulation than a limitation upon the powers of the defendant.

■ The meaning of ultra vires in the law of corporations is illustrated as an act beyond the scope of the power of the corporation as defined by its charter or act of incorporation. Clearly the defendant had the authority to employ agents and others to carry on its appropriate business. Corporations can only act through agents. Whether provided in its charter, or otherwise, the defendant would have a right to place restrictions or limitations upon the tenure or authority of any one selected to represent it. The fact that an agent might violate restrictions upon him would not signify that the corporation had acted beyond its powers. In this case the evidence was that, if the alleged contract of permanent employment was made, such contract was approved by the proper authority. Moreover, if made, its status at this time would estop the defendant to assert that it was made without proper authority. The doctrine of ultra vires would not apply.

■■ 2. The second point urged by the defendant is that the agreement lacked mutuality and that there was no consideration adequate to support the alleged contract. The evidence was that the plaintiff was gainfully employed, and had been so employed over a period of years in a related or kindred business. The defendant's vice-president understood this and was eager on behalf of his company to establish the business of the defendant in the area of plaintiff's operations. It was a highly competitive business and plaintiff claimed to have obtained and retained on behalf of his then principal a large number of valuable and dependable regular customers. The defendant, through its sales manager, sought to accomplish two things: (1) To obtain the services of a competent salesman, and (2) to combine with this competency knowledge of the business and an acquaintance with old and prospective customers. A third purpose might be enumerated, to the effect that the defendant's sales manager sought also to divert business from going to its competitor to itself. It seemed feasible to accomplish these results by securing the services of the plaintiff. Accordingly, in its negotiations, it proposed to the plaintiff, as appeared from the evidence, to give him permanent employment if he would relinquish his then competitive employment and devote his whole time to the services of the defendant. The consideration for such employment was in two parts, (a) the plaintiff agreed to relinquish his then employment (this was valuable to the defendant because it removed a potent agency from competition), and (b) it enabled the defendant to secure the services of an experienced salesman in its special line of business.

In the case of Littell v. Evening Star Newspaper Co., 73 App.D.C. 409, 120 F.2d 36, 37, the Court of Appeals for the District of Columbia collated the authorities on the question of permanent employment. It stated the rule to be "that unless the parties reveal an intent to enter into a contract for permanent employment, it will be regarded as terminable."

■ If the intent of the parties is not clearly revealed, then, in harmony with all the authorities, the court should "look to evidence of surrounding circumstances to determine what was in the minds of the contracting parties." The court illustrated as follows: "Thus, when one who enters into a contract of employment, promises not only that he will give his services but also additional consideration—as, for example * * * by resigning from government service, by giving up his own

business, or by relinquishing an acknowledged right to recover for injury which he has suffered—such facts may be sufficient, in each case, to show the intent of the parties to enter into a contract for permanent employment."

In the instant case the plaintiff says he resigned from a lucrative position which he had held for many years. He had every reason to believe that such position was permanent within the usual meaning of that term, that is, that it would continue indefinitely. This was a good consideration and so recognized by the authorities. When plaintiff resigned he, in effect, paid the consideration for his new position. He gave up a position of long standing to take competitive employment and thereby rendered it impossible, or at least improbable, that his former employer would ever again resume the relationship. It was a sacrifice not ordinarily made. His work with his former employer was satisfactory and agreeable. It is reasonable to assume that there was an inducement tendered him to give up good employment more or less permanent for like employment with another company where the emoluments were not substantially increased.

The logic of this situation was well expressed in Harrington v. Kansas City Cable Ry. Co., 60 Mo.App. 223, where the terms of employment were "that it should be steady and constant so long as plaintiff should properly do the work." In that case the plaintiff gave up and surrendered a claim for damages against the defendant. The court said: "It may be freely conceded that a hiring for an indefinite time is a contract determinable at the will of either party. Such might be the construction of a contract for steady and constant employment where the sole consideration for the employment was the services rendered during the current time of the employment. * * * Here the plaintiff had a valuable cause of action against defendant, which he released in consideration that he would receive constant and steady employment at work so long as he did it well. The consideration is not only the work well done during the course of the service, but a valuable consideration relating to the length of the service."

To use an illustration similar to that employed by the court in the Harrington case, supra, suppose the plaintiff, instead of giving up lucrative employment, had paid to the defendant a consideration of $1,000

for permanent employment; would it be reasonable to suppose that the defendant could retain the $1,000 and then terminate the employment at its will? No one could urge or support the propriety or legality of such a course.

This case bears a strong analogy to that of Riefkin v. E. I. Du Pont de Nemours & Co., 53 App.D.C. 311, 290 F. 286, 289. In that case the plaintiff resigned a position with the government to take employment from the defendant. "* * * the defendant agreed that, if he would resign from that position and take charge of the purchase of coal for the defendant, he would be given 'permanent employment in that capacity so long as he rendered satisfactory services and was loyal to its interests.'"

The court denied the right of the defendant to discharge the plaintiff in that case. In doing so, it said that its conclusion was fully supported by the authorities and it particularly cited Carnig v. Carr, 167 Mass. 544, 46 N.E. 117, 118, 35 L.R.A. 512, 57 Am.St.Rep. 488, where the employee had given up his own business to take what he believed to be permanent employment with the defendant. The court, on the subject of mutuality, quoted approvingly from the Carnig v. Carr case, as follows: "'So construed, the contract would be capable of enforcement, and there would be no want of mutuality, because the plaintiff might not have bound himself to continue in the defendant's employment.'" The court also cited the case of Pierce v. Tennessee Coal, Iron & R. R. Co., 173 U.S. 1, 19 S.Ct. 335, 43 L.Ed. 591. The latter case was precisely like the Harrington case, supra. In deciding the Riefkin case the court scorned the suggestion that it sustained no analogy toward the Carnig v. Carr case. Note the language of the court: "The suggestion that the rule in Carnig v. Carr is not applicable here, because the plaintiff in that case had relinquished a competitive business, is without force, for the reason that here plaintiff likewise made a surrender of something that well may have been of equal value to him, namely, his position with the government."

Able counsel for the defendant relies much on the case of Minter v. Tootle-Campbell Dry Goods Co., 187 Mo.App. 16, 173 S.W. 4, 8. It is suggested by counsel that the plaintiff in that case gave up other employment to take a position with the defendant. The abandonment of other employment in the Minter case is not com-

parable to the facts here. The court answered that contention as follows: "The rule of reason should be applied in all its fullness in cases of this character. The success of a large mercantile business depends so largely upon the building up and maintenance of a highly efficient and harmonious organization that it is hard to believe an experienced merchant would bind himself to give a servant employment for life with no other consideration on the servant's part than his promise to serve. The general rule that the assurance of permanent employment will be construed as meaning an indefinite, as distinguished from a special, or merely temporary, employment, is a common sense inference founded upon common knowledge of the custom and usages of business. The effort of plaintiff to show an additional consideration passing from him to defendant was abortive, since it shows that he merely abandoned other activities and interests to enter into the service of defendant—a thing almost every desirable servant does upon entering a new service, but which, of course, cannot be regarded as constituting any additional consideration to the master."

The text of the law as it appears in 39 C. J., Section 13, p. 41, is in harmony with the foregoing decision. It is there said: "A contract for permanent employment in consideration of the employee's release of a claim for damages for personal injuries or a dismissal of a suit founded thereon is not against public policy, nor is it void for indefiniteness. Such a contract is not void for lack of mutuality in that there is no express promise by the employee to perform the services. * * * It has been held further that the relinquishment of a present position in reliance on a promise to give permanent employment is a sufficient consideration for such a contract, that such a contract is not void as indefinite, or as wanting in mutuality because the employee is not bound to continue in the employer's service, or because the employee might terminate the contract at will, although the employer is bound."

The discussion under division 2 covers the point raised by the defendant under its division 3. According to all the authorities, the giving up of another position, competitive in its nature, by plaintiff, was a special consideration for a life time contract.

■ 4. Mr. Walter Mehen was vice-president and the sales manager for the defendant at the time the contract was made. He was clothed with authority to employ the plaintiff. There is no controversy as to his authority to do that. However, he was without even apparent authority to make a lifetime contract and never assumed to have such authority. Mr. Mehen did not close the contract with plaintiff without consultation and approval of others having charge and control of the affairs of the defendant. He had the approval and authorization of those in authority. Presumably when they gave such approval they were conversant with all the details of the employment and thoroughly understood the circumstances under which the plaintiff was giving up another position in order to accept employment from the defendant.

Whether the facts, as alleged in the complaint or as stated in evidence by the plaintiff, are true is not here for decision. The only question is whether the plaintiff made and may again make a submissible case. The foregoing discussion would justify the conclusion that he did make a submissible case and would be able to do so again. Accordingly, the motion for judgment following defendant's undetermined motion for a directed verdict should be overruled. It is so ordered.