John J. BOLEMAN, Plaintiff, Appellee,

v.

The CONGDON AND CARPENTER COMPANY, Defendant, Appellant.

No. 80–1529.

United States Court of Appeals, First Circuit.

Argued Dec. 3, 1980.

Decided Jan. 14, 1981.

Richard A. Perras, Boston, Mass., with whom Deutsch, Weintraub & Glazerman, P. C., John L. Clark, and Edwards & Angell, Providence, R. I., were on brief, for defendant, appellant.

Dominic A. Caronna, Worcester, Mass., with whom Fusaro & Fusaro, Worcester, Mass., was on brief, for plaintiff, appellee.

Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

The primary question on this appeal from the denial of defendant's motion for judgment n. o. v. is whether the evidence, viewed most favorably to plaintiff, warranted a finding that he had a contract for lifetime employment. We hold it did not.

Plaintiff, Boleman, became employed by defendant Congdon & Carpenter Co. in 1937, starting at the bottom. Defendant was engaged in the production and sale, inter alia, of steel. It had several outside salesmen, each with an assigned, relatively small territory. In 1957 defendant decided to expand into the Worcester, Massachusetts area and one Cotter, its then sales manager, asked plaintiff if he would like to become an outside salesman and be given that territory. Plaintiff at that time was living in Rhode Island and had an inside desk as manager of defendant's steel order department. Taking this new position would require his moving from Providence to Worcester. At the same time, in his words, it was a "promotion ... with ... the potential for greater earnings ... an opportunity." He was 40 years old. According to plaintiff, Cotter's offer was as follows.

"Worcester would be my home, it would be my base of operations, irrespective of what territory might be assigned to me. He told me he was giving me a lifetime opportunity. He said that with my knowledge, practical and technical, that I would have a job with the company for life."

After plaintiff had discussed the matter with his wife he returned to Cotter and said he was agreeable and Cotter "reiterated," saying,

"I had a lifetime job with the company, that irrespective of the territory I might be assigned, Worcester would be my base of operations. And he repeated—if I remember correctly—that it was a lifetime opportunity."

There was no undertaking on plaintiff's part that he would remain with defendant any longer than he pleased.

In one part of plaintiff's testimony he stated that his understanding was that he was to "have the lifetime job as a salesman even though [he] weren't making any sales." At another he said he would not "necessarily [be] an outside salesman. But my understanding was that I could have a job with the company the rest of my life. I never put it in that one particular classification."

The first of these constructions, that plaintiff was permanently employed even though he failed to give satisfactory performance, would render the contract void for lack of consideration. *Cf. Kirkley v. F.H. Roberts Co.*, 1929, 268 Mass. 246, 252, 167 N.E. 289, 290; *Carnig v. Carr*, 1897, 167 Mass. 544, 547, 46 N.E. 117, 118. The second would raise perhaps insuperable dif-

ficulties in the way of lack of specificity, as to both performance and the measurement of damages, it being apparent that inside jobs paid less than outside, but with nothing to determine how much. *Cf. Kirkley v. F.H. Roberts Co.*, ante. Having in mind plaintiff's lack of outside experience, this transfer was by no means a mere theoretical possibility.

Passing these difficulties, and continuing with the evidence, with the exception of an exchange between plaintiff's wife and one Bump, post, the foregoing conversations were the only words ever exchanged on the subject between plaintiff and any employee of defendant until suit was brought following plaintiff's discharge in 1974 for refusing to transfer back to Rhode Island to take over the Rhode Island sales territory. Even when the transfer issue arose in 1973, with the threat of discharge, and was discussed for a year with plaintiff, on his own testimony, vigorously objecting, plaintiff said nothing about a lifetime contract, or an agreement that he would never have to leave Worcester. Instead, he based his whole protest on the fact that his wife was ill, and could not, or would not, go.

There was no writing. Cotter was deceased. Defendant's officers denied that plaintiff had a lifetime contract, and there was no evidence that any other employee possessed such.

■ A binding offer is made when the offeror leads the offeree reasonably to believe one has been made. *Timmins v. F.N. Joslin Co.*, 1939, 303 Mass. 540, 542, 22 N.E.2d 76, 77. At least unless words are unambiguously clear, their meaning may vary depending upon the total circumstances. *Campion v. Boston & Maine R.R.*, 1930, 269 Mass. 579, 581, 169 N.E. 499, 500; *Carnig v. Carr*, ante. In the present case this principle would seem to lead, factually, in precisely the opposite direction from *Carnig*, where such an agreement was found. With plaintiff only 40 years old and lacking any experience as an outside salesman, we would find it hard to think that defendant

was offering a binding commitment of lifetime employment, free of transfer from a yet untried territory, simply in consideration of his taking a promotion that would entail moving from Providence to Worcester. This difficulty is enhanced by plaintiff's asserted "understandings," mutually inconsistent, and each diminishing the enforceability of the agreement as a business undertaking. A far more reasonable, and perhaps the only fair interpretation is that plaintiff was simply assured of a promotional opportunity that was expected to last into the indefinite future; a statement of an "opportunity" with an expectation of continuance. *Cf. Kuzmeskus v. Pickup Motor Co.*, 330 Mass. 490, 493, 115 N.E.2d 461, 463. Hardly more could be expected in return for the minor nature of plaintiff's undertaking.[1]

■ We need not, however, reach such questions. The evidence does not warrant a finding that Cotter was authorized to make a lifetime agreement on any basis. However the contract be construed, it was well within the category of extraordinary agreements requiring the strongest proof of authority by the one making it to bind a corporate employer. Cotter, never an officer, was not shown to have authority even to hire salesmen in the ordinary course without the assent of his superiors. But even if he had such, the cases, without exception, hold that ordinary authority to hire is insufficient to bind a corporate employer to a lifetime obligation. So, too, is the holding of corporate office. *See Rydman v. Dennison Mfg. Co.*, 1977, 373 Mass. 855, 366 N.E.2d 763; *Lucey v. Hero Int'l Corp.*, 1972, 361 Mass. 569, 572, 281 N.E.2d 266 (president); *Simonelli v. Boston Hous. Auth.*, 1956, 334 Mass. 438, 137 N.E.2d 670 (personnel manager); *Chesapeake & Potomac Tel. Co. v. Murray*, 1951, 198 Md. 526, 531–32, 84 A.2d 870, 872 (president); *James F. Monaghan, Inc. v. M. Lowenstein & Sons*, 1935, 290 Mass. 331, 333, 195 N.E. 101 (vice president). For this same reason, even if plaintiff had shown what, if any, office one

---

1. Compare the seminal Massachusetts case of *Carnig v. Carr*, ante, where the plaintiff's promised lifetime employment was in consideration of his giving up his own competing business.

Donald Bump held at the unspecified date when he spoke with plaintiff's wife, plaintiff's attempt to show company ratification of the contract must fail.

*Reversed, judgment for defendant.*