McNitt v. BIC                    CV-91-98-B    03/09/94 P

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Jonathan R. McNitt

    v.                                        Civil No. 91-98-B

BIC Corporation

**O R D E R**

    Jonathan McNitt sued BIC Corporation ("BIC") for negligence and strict liability.  After the trial started, BIC waived its right to challenge all elements of McNitt's claims except causation and damages.  As a result, I instructed the jury that it must find for McNitt and determine his damages if McNitt proved that BIC had caused his injuries.  I also refused to admit evidence unless it was otherwise admissible and relevant to the issues of causation, damages, or credibility.  McNitt argues that he is entitled to a new trial because I erred in so limiting the evidence.  Citing Rawson v. Bradshaw, 125 N.H. 94, 98-99, 480 A.2d 37, 40 (1984), McNitt contends that New Hampshire law prohibits a judge from excluding evidence that is relevant only to a waived issue unless the parties agree to a statement of facts to put the evidence concerning the remaining issues in a proper context.  Since McNitt did not agree to such a statement, he contends that I should have allowed him to introduce evidence

that was relevant only to the waived issues.

I reject McNitt's argument for two reasons. First, BIC had the power to waive its right to challenge all elements of McNitt's claims except causation and damages, and once it did so, the Federal Rules of Evidence and Civil Procedure permitted me to limit the proof at trial to evidence that was relevant to these issues. Second, even though New Hampshire's substantive law controls in this diversity of citizenship case, Rawson is inapplicable because it requires the state courts to follow a procedural rule that need not be applied in federal court to prevent forum shopping or the inequitable administration of law.

## I. BACKGROUND

### A. Facts

McNitt was severely burned while he was filling a tank at work with a highly flammable adhesive compound. After turning on the pump, McNitt left the booth where the tank was located and went into another room several feet away to smoke a cigarette. When he got into the room, McNitt lit a cigarette with his BIC J-6 fixed flame disposable lighter. After replacing the lighter in his shirt pocket, McNitt took a couple of puffs from the cigarette, clipped the head of it, ground it out with his shoe,

2

and returned to the booth to attend to the pump. While he was checking the pump's hoses, McNitt became engulfed in flames and was severely burned.

McNitt contended at trial that his injuries were caused by a condition in his BIC lighter known as afterburn. Afterburn occurs when a lighter continues to burn after it is supposed to extinguish. McNitt supported his claim with expert testimony that microscopic debris had collected on the seal of the lighter's pressurized fuel tank and that the debris prevented the seal from working properly. According to McNitt's expert, fuel continued to leak from the lighter's fuel tank after the seal was deployed and this leak caused McNitt's lighter to continue burning even after he replaced it in his shirt pocket. Thus, when McNitt returned to the booth filled with flammable fumes, either the lighter itself or material in his shirt pocket that had been ignited by the lighter served as the ignition source for the fire that caused his injuries.[1]

BIC's expert testified that McNitt's lighter had not experienced afterburn. Further, BIC produced other evidence

---

[1]McNitt also supported his claim with testimony from another expert who discounted other potential ignition sources and opined that the evidence pointed to an ignition source in the general area of McNitt's shirt pocket.

suggesting that McNitt may have caused the fire when he attempted to use the lighter to look inside the barrel containing the flammable adhesive. Finally, BIC presented evidence suggesting that there were other potential ignition sources for the fire, such as static electricity and sparks.

B.  Procedural History

McNitt attempted to introduce evidence at trial from several sources concerning potential defects in other BIC lighters. First, he sought to introduce correspondence and records concerning a preliminary finding by the Consumer Products Safety Commission that another BIC lighter model was defective and could experience afterburn. Second, he sought to introduce minutes of meetings of the American Society for Testing and Materials, which indicated that BIC representatives were present when the general subject of afterburn was discussed. Third, he sought to introduce records from BIC describing instances in which afterburn was alleged to have occurred in other BIC lighter models. Finally, he sought to introduce thirty-three complaint letters alleging that afterburn had been experienced in the same model lighter that McNitt had been using.

During the trial, I held a hearing outside of the jury's presence to consider whether McNitt's exhibits should be admitted

4

into evidence.  In response to my request, BIC agreed at this hearing to waive all other claims and defenses and to defend the case solely on the issues of causation and damages.  As a result, I proposed to withdraw the remaining issues from the jury's consideration and have the jury decide the case on the disputed issues.  McNitt objected to this proposal for several reasons. First, he claimed that it was inconsistent with an unnamed New Hampshire Supreme Court decision.  Second, he argued that issues such as whether the product was defective and unreasonably dangerous and whether the defendant was on notice of the defect were so closely intertwined that it would be unfair to limit his proof to evidence that was relevant to the issues of causation and damages.  Finally, he contended that the timing of the decision was unfair because he had already made his opening statement and was in the midst of presenting his case.

After hearing McNitt's objections, I made the following ruling:

> THE COURT:  All right.  I've thought a lot about this issue over the weekend and today, and I really feel it is one of my responsibilities here to see that the cases are focused on the issues that are genuinely in dispute, and where something is not disputed:  a legal theory of liability, potential theory of liability, a defense, or a particular piece of evidence - I want to try to prevent the jury from being potentially confused by issues that aren't really in

5

dispute or in the case. And I think that's one of my responsibilities here. And where the defendant has indicated a willingness to dispute only causation and damages and not any other issue in the case, I think I'm inclined -- I'm required to give serious consideration to requiring the plaintiff to try the issues that are only in dispute. And that's what I'm going to do here.

Now, having said that, <u>I want to be very clear that I am not restricting any testimony from being produced that is relevant to the issues of causation or damages. To the extent the plaintiff has evidence of what happened in other lighters that bears on the issue of causation and that evidence is relevant and its probative value outweighs its prejudicial effect, it will be admitted</u>.

For example, Dr. Geremia [McNitt's expert] is free to testify to the extent he inspected other lighters - and his opinion is based on, here is based on his inspection of other lighters - he's going to be free to testify to that, subject of course to the circumstances. And the defendants have a right to assert any objection they have. <u>But as a basic proposition, Mr. KillKelley, I want you to understand I'm not by this ruling restricting you in eliciting testimony from Dr. Geremia regarding other inspections of lighters that he made, nor am I ruling out that evidence of what happened in other lighters might not be admissible on the issue of causation</u>.

If and when you want to offer evidence of that type, on the issue of causation, before you do I would simply instruct you to come to the bench and explain to me why now you think you have established a predicate for admission of evidence of problems with other lighters on the issue of causation.

<u>But I'm going to allow the defendant to, in effect, withdraw any contention it has to certain issues in the plaintiff's case, and rather than an admission or a stipulation I take this to be an</u>

6

agreement by the defendant to withdraw its decision to contest certain issues.

And what I understand the defendant has done is the defendant has agreed to withdraw its right to contest any issues except issues of causation and damages, and thus issues bearing on whether this product was unreasonably dangerous and defective, issues such as whether warnings accompanying this product were adequate, issues such as whether the defendant manufactured the lighter in accordance with the state of the art, issues such as the damages here were a foreseeable result of the plaintiff's use of the lighter, issues such as comparative negligence and plaintiff's misconduct, are not going to be theories that will be presented to the jury.

What will be presented to the jury is the theory of causation, and in my instructions make it clear to the jury that the plaintiff bears the burden of proof on that by a preponderance; that the plaintiff's theory here is that this debris was present on the globe seal of the lighter as a result of manufacturing or normal use of the lighter; that the debris, presence of the debris in the globe seal resulted in a failure to extinguish; and that the failure to extinguish was a substantial contributing cause of the plaintiff's injuries.

And I will instruct the jury that if that contention is proved by a preponderance of the evidence, then the jury shall go on to consider the damages to which the plaintiff is entitled. If it has not proved by a preponderance of the evidence, the jury shall find for the defendant. And all other theories that bear on liability have been waived by this defendant. Thus, any evidence that we will be admitting will be insofar as it bears on the questions of causation and damages, and of course legitimate impeachment witnesses that are testifying on those issues. And I'll note your objection for the record to that, Mr. KillKelley. (emphasis added).

7

In an effort to address McNitt's concern with the timing of the ruling, I also informed McNitt's attorney:

> . . . that if you require some additional time here to consult with Dr. Geremia I will certainly understand that, and if you want to put him on tomorrow rather than today that's an option that I will give you so that you can consult with him.
>
> And I will also say that I, I have not had the time yet to read the opening statement. If in reviewing the defendant's opening statement you believe there are statements in that opening that concern issues other than causation and damages, I will consider a limiting instruction - not that will be critical of the defense, but will simply instruct the jury that to the extent that any reference was made that those issues are no longer in the case and any statement should not be considered by the jury. And I'll leave that to you to draw to my attention any specific matters in the opening statement that you feel require some limiting instruction.

Finally, I preliminarily determined that none of the above-mentioned exhibits would be admitted because they did not appear to be relevant to the issue of causation. However, I made the ruling without prejudice to "the plaintiff attempting to offer them depending upon what happens, to the extent the plaintiff can establish that they are admissible on the issues of causation, damages and/or impeachment and to the extent that they meet this test of sufficient similarity." Thereafter, plaintiff made no attempt to argue that the exhibits were relevant to the disputed issues. Therefore, I never finally ruled on the admissibility of

8

the exhibits.

Consistent with this ruling, I instructed the jury that issues such as negligence, defective design, defective manufacture, and failure to warn were no longer a part of the case. Thus, I instructed the jury that if it found that McNitt had proved legal causation, the jury must find for the plaintiff and go on to determine the damages to which he was entitled.

On November 18, 1993, the jury returned a verdict for the defendant.

## II. <u>DISCUSSION</u>

McNitt premises his motion for new trial on the claim that I erroneously excluded evidence and legal argument that the jury was entitled to hear. In reviewing this claim, I will deny McNitt's motion unless I determine that (i) I erred in excluding the evidence and argument; and (ii) my error affected McNitt's "substantial" rights. Fed. R. Civ. P. 61; <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 553-54 (1984). As I conclude that federal law permits my decision to exclude the evidence and that <u>Erie R.R. v. Tompkins</u> and its progeny do not require the application of contrary New Hampshire caselaw, I deny McNitt's motion for a new trial.

9

A.    Federal Law

McNitt argues, without citing any supporting authority, that federal law prohibits a district judge from restricting the evidence at trial to genuinely disputed issues.  I disagree.

As a general rule, federal trials are governed by the Federal Rules of Evidence.  See Fed. R. Evid. 101 ("[t]hese rules govern proceedings in the courts of the United States . . . to the extent and with the exceptions stated in Rule 1101").  Among the matters that a court must consider when construing the rules is the "elimination of unjustifiable expense and delay."  Fed. R. Evid. 102.  Moreover, the rules expressly provide that only evidence "that is of consequence to the determination of the action" is relevant and admissible.  Fed. R. Evid. 401, 402.  Finally, even if evidence is deemed relevant, it may still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[2]  Fed.

_____

[2]The recent amendments to the Federal Rules of Civil Procedure recognize the court's inherent authority to take action with respect to such matters even prior to trial.  Rule 16(c) now provides in pertinent part that, at any pretrial conference "consideration may be given, and the court may take appropriate action, with respect to (1) the formulation and simplification of

10

R. Evid. 403.  Notwithstanding McNitt's arguments to the
contrary, when these rules are considered together, they plainly
authorize a district judge to take appropriate measures to keep
the trial focused on matters that are genuinely in dispute.

It became apparent once the trial commenced that the real
issue in the case would be whether McNitt's injuries were caused
by afterburn in his BIC lighter.  Thus, it was not surprising
that BIC was prepared to waive its right to require McNitt to
prove the other elements of his strict liability and negligence
claims if the jury determined that his injuries were caused by
afterburn.[3]  Moreover, it was within BIC's power to do so.[4]

issues. . ." (emphasis added).

[3]McNitt criticizes my decision to ask BIC if it was prepared
to waive all claims and defenses except the issues of causation
and damages.  In taking the initiative on this matter, I was
motivated by several considerations.  First, after listening to
the opening statements, it became apparent that the central issue
in the case was causation.  Second, after reviewing a number of
decisions in the First Circuit and other jurisdictions concerning
the admissibility in product liability cases of evidence of
defects in other products, I concluded that the admissibility of
such evidence might well depend upon the purpose for which the
evidence was offered.  See, e.g., Freund v. Fleetwood
Enterprises, Inc., 956 F.2d 354, 360 (1st Cir. 1992); Ponder v.
Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987); Exum v.
General Electric Co., 819 F.2d 1158-1162-63 (D.C.Cir. 1987);
McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981).  Since
the real issue in the case was causation, I was concerned that
the jury might be confused if I admitted the evidence with an
instruction limiting its application to issues that were not

11

Once BIC made these concessions, evidence relating only to these waived elements -- the lighter's defective design, BIC's notice of the defect, and the adequacy of the warranties BIC supplied with its product -- was no longer relevant because BIC agreed that NcNitt would be entitled to a verdict in his favor if he proved that his injuries were caused by afterburn in his BIC

---

really disputed during the trial, such as notice. Third, limiting the issues that would be presented to the jury would lessen the complexity of the jury instructions and allow the jury to better focus on the real issues and the evidence on which it would have to base its verdict. Finally, such a limitation presented the possibility of shortening the trial.

[4]The First Circuit has recently reaffirmed that a "defendant may remove issues ... from a case by telling the court that he will not dispute those issues," provided that the defendant's offer to remove the issues is clear and unequivocal and covers the substantive ground necessary to actually remove them from the case. United States v. Garcia, 983 F.2d 1160, 1174 (1st Cir. 1993). Here, BIC's offer satisfied these requirements because its clarity and breadth justified my "(a) disallowing any 'subsequent cross-examination or jury argument that seeks to raise' those issues, and (b) 'charging the jury that if the [McNitt met his burden with respect to] all other elements ..., they can resolve the issue against the defendant because it is not disputed." Id. (quoting United States v. Ferrer-Cruz, 899 F.2d 135, 139 (1st Cir. 1990) (in turn quoting United States v. Figueroa, 618 F.2d 934, 942 (2d Cir. 1980))). Admittedly, Garcia was a criminal case. However, I see no reason why the rule should not also be available to civil defendants such as BIC. See, e.g., Raymond v. Raymond Corp., 938 F.2d 1518, 1523 (1st Cir. 1991) (although Fed. R. Evid. 407 cannot be used to exclude evidence of subsequent remedial measures offered to prove "feasibility of precautionary measures", this exception applies only if feasibility is controverted).

12

lighter.  Thus, evidence that was <u>only</u> relevant to these waived issues became excludable pursuant to Fed. R. Evid. 402.[5]

McNitt also argues that it was unfair to exclude evidence relevant only to the defective design and manufacturing issues because these issues were so closely related to causation.  I reject this argument because its central underlying premise is flawed.  To the extent that evidence was so closely related to the product defect and causation issues that it was relevant to both, I plainly informed McNitt that I would allow the evidence if it was otherwise admissible.  For example, when McNitt's expert testified that the design of McNitt's lighter allowed enough space between the lighter's piston and its valve body for debris to collect on the lighter's seal, I allowed the testimony because it was relevant to the issue of causation as well as the product defect issues.  Similarly, when the expert testified that

_____

[5] Moreover, even if such evidence could somehow have been characterized as relevant, I nevertheless would have excluded it pursuant to Fed. R. Evid. 403 because its minimal probative value would have been substantially outweighed by the risk of confusion and the waste of time that would have resulted if I had admitted the evidence with limiting instructions.  <u>See</u> <u>Secretary of Labor v. DeSisto</u>, 929 F.2d 789, 794-96 (1st Cir. 1991); <u>see also</u> <u>Pinkham v. Maine Cent. R. Co.</u>, 874 F.2d 875, 881 (1st Cir. 1989) (exclusion of evidence concerning fact already established by unrebutted evidence was harmless because the evidence was cumulative).

McNitt's lighter had a space in the top that permitted debris to enter the lighter, I allowed testimony concerning the space, but disallowed testimony concerning alternative designs that could have covered it.  Finally, I allowed McNitt to produce evidence of afterburn in another BIC lighter when that evidence became relevant to the credibility of McNitt's witness.  The only evidence I disallowed related to such issues as whether the lighter could have been designed differently to prevent afterburn from occurring.  This evidence was not relevant to any genuinely disputed issue and was therefore properly excluded.

McNitt also claims that I improperly excluded several exhibits he sought to offer concerning afterburn in other BIC lighters.  However, I note that McNitt never sought a final ruling on the exhibits' admissibility.  During the hearing I held on this issue, I plainly informed counsel that I was only ruling the exhibits inadmissible to the extent that they were offered to prove issues no longer in dispute.  I explicitly informed McNitt's counsel that if he intended to argue that the exhibits were relevant to a disputed issue, he was free to attempt to offer them for that purpose.  McNitt, however, did not attempt to offer the exhibits again.  Thus, I never ruled on whether the exhibits were admissible because they were relevant to a disputed

14

issue.[6]

I also reject McNitt's claim that he was unfairly surprised because my decision to limit the evidence to genuinely disputed issues came in the middle of trial. I am sensitive to the concern that important evidentiary rulings may significantly affect a party's trial strategy. Nevertheless, I do not agree that McNitt was unfairly prejudiced by the timing of my decision. See Garcia, 983 F.2d at 1176 (although offer to remove issues is better handled before trial or early in the trial process, judge retains discretion and flexibility in this area). First, by waiving its right to contest certain elements of McNitt's claims, BIC lessened the complexity of McNitt's case by eliminating his need to prove several elements of his strict liability and negligence claims. Second, while this decision undoubtedly required McNitt's counsel to eliminate certain witnesses and limit the testimony he planned to elicit from others, I allowed McNitt's counsel additional time to consult with his expert

---

[6]I can only assume that McNitt did not then and does not now contend that these exhibits are relevant to the issue of causation. Such an assumption appears to have a sound basis in fact, since it is difficult to conceive of how evidence of afterburn in approximately 100 out of the hundreds of millions of lighters that BIC had manufactured could increase the likelihood that McNitt's lighter experienced a similar condition.

witnesses to ensure that he would be able to make any required adjustments in presenting his case. Finally, at the close of the evidence, I carefully instructed the jury to ensure that it was not confused concerning the issues upon which it would base its verdict. Given the above, the only prejudice that McNitt suffered as a result of my ruling was that he was denied the opportunity to present irrelevant and potentially prejudicial evidence. This is hardly the kind of prejudice that will support a motion for a new trial.

B.    New Hampshire Law

McNitt argues that even if federal law generally permits a district judge to limit evidence to disputed issues, the court may not so limit the evidence in a diversity of citizenship case governed by New Hampshire's substantive law. In support of this argument, McNitt relies on the New Hampshire Supreme Court's decision in Rawson v. Bradshaw, 125 N.H. 94, 480 A.2d 37 (1984).

In Rawson, the court established a general rule governing bifurcation of tort cases in New Hampshire courts. The plaintiff in Rawson obtained summary judgment on the issue of liability and the presiding judge consequently limited the trial issues to causation and damages. During the trial, the defendant attacked plaintiff's account of the accident. The trial judge, however,

16

precluded plaintiff from rebutting this attack with evidence that defendant's intoxication caused the accident. On appeal, the supreme court concluded that the trial judge erred in excluding plaintiff's evidence, reasoning that the evidence was relevant "to explain and make credible [plaintiff's] testimony as to the erratic behavior of the defendant's vehicle just prior to the accident and his resultant need to resort to abrupt maneuvers, in a panic situation, to avoid a possible collision." Id. at 98, 480 A.2d at 40. The court went on to hold that in future tort cases,

> where either a plaintiff successfully moves for summary judgment on the issue of liability or a defendant concedes liability, the parties should provide the trial judge with a statement of agreed facts sufficient to explain the case (specifically the defendant's negligent conduct) to the jury and to place it in a proper context so that the jury might more readily understand what they will be hearing in the remaining portion of the trial. Absent such an agreement on facts, the matters cannot be properly severed, and summary judgment on individual issues, therefore, should not be granted or a trial on liability be waived, because it will lead to the types of disputes before us herein.

Id. at 98-99, 480 A.2d 40. This requirement was subsequently adopted as a New Hampshire Superior Court Rule. See N.H. Sup. Ct. R. 58-A.

McNitt argues that I was required to apply Rawson pursuant

17

to <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938), and its progeny.  I disagree.  As the court explained in <u>Hanna v. Plumer</u>, 380 U.S. 460 (1965), a two-part test governs the choice between state and federal law in diversity cases.  First, if a practice mandated by state law is in "direct collision" with a federal rule of civil procedure or evidence, the federal rule will control unless the rule is unconstitutional or beyond the scope of the rule-making power delegated to the Supreme Court by the Rules Enabling Act, 28 U.S.C. § 2072.  <u>Id.</u> at 472-74.  In all other instances, the choice of law issue must be resolved by reading <u>Erie's</u> "outcome-determination" test in light of its twin aims:  discouraging forum shopping and the inequitable administration of law.  <u>Id.</u> at 468.

Several applications of the <u>Rawson</u> rule directly collide with the Federal Rules of Civil Procedure and Evidence.  First, because <u>Rawson</u> prohibits a court from granting partial summary judgment unless the party opposing the court's order agrees to a joint statement of facts allowing the jury to put the remaining issues in a proper context, <u>Rawson</u> directly conflicts with Fed. R. Civ. P. 56(a), which allows a federal court to award partial summary judgment without the consent of the parties.  Second, by preventing a court from focusing the trial on the disputed issues

18

or severing issues in the case for separate trials without the consent of the parties, Rawson directly conflicts with the recent amendments to Fed. R. Civ. P. 16, which expressly makes these options available to a federal judge. Third, by precluding separate trial of particular issues within an individual claim, Rawson directly conflicts with Fed. R. Civ. P. 42(b), which authorizes a judge to order the separate trial of "any claim ... or of any separate issue." Finally, as applied in this case, Rawson arguably conflicts with Fed. R. Evid. 401, 402 and 403, which allow a judge to restrict the evidence at trial to facts that are of "consequence to a determination of the action," and to exclude relevant evidence if its probative value is substantially outweighed by the danger of "confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."[7] Since McNitt does not argue that any of these rules

---

[7]Of course, state substantive law plays an important part in establishing the legal standard against which relevance is judged in a diversity of citizenship case. See Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 401[03], at 401-18 (1993). However, while state law determines the elements of the cause of action, the ultimate issue of whether a particular fact is of consequence to the outcome of an action remains a matter of federal law governed by Rule 401. See, e.g., Palmer v. Krueger, 897 F.2d 1529, 1532 (10th Cir. 1990) (although substance of jury instruction is determined by state law, whether or not the

are unconstitutional or beyond the scope of the Rules Enabling Act, any conflict between these rules and <u>Rawson</u> renders the decision inapplicable in federal court.

Rather than relying on the direct conflicts listed above to justify my decision not to apply <u>Rawson</u>, I hold that the rule is inapplicable here because it is a state procedural rule that need not be applied in federal court to prevent either forum shopping or the inequitable administration of the law. <u>See</u> <u>Davis v. Browning-Ferris Indus., Inc.</u>, 898 F.2d 836, 837-38 (1st Cir. 1990) (New Hampshire rule allowing counsel to ask the jury to award damages amount requested in the complaint's ad damnum clause does not apply in federal court). The only difference between the <u>Rawson</u> rule and the procedure I followed in this case is that I did not give McNitt a <u>de</u> <u>facto</u> veto over my decision to limit the proof to the genuinely disputed issues.[8] Had I followed <u>Rawson</u> I would have allowed evidence to be admitted to

_____

instruction should be given is governed by federal law); <u>Stineman v. Fontbonne College</u>, 664 F.2d 1082, 1087 (8th Cir. 1981).

[8]I note that McNitt does not contend that he was denied the opportunity to submit an agreed-upon statement to the jury to put the remaining issues in a proper context. Instead, he insists on the right to veto my decision to limit the evidence to the disputed issues by refusing to agree to a statement of undisputed facts.

the extent that it was relevant to any element of McNitt's strict liability and negligence claims. Nevertheless, I would have instructed the jury that it could consider only evidence relevant to the causation issue in deciding that issue. See, e.g., Fed. R. Evid. 105 ("Where evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.") Thus, if I had followed Rawson, the jury could not have reached a different result than the one it actually reached without disregarding my limiting instructions. Under these circumstances, I fail to see how the failure to follow Rawson in federal court could either encourage forum shopping or result in the inequitable administration of law. No party has the right to choose a forum based on an assessment of the likelihood that the jury will disregard the court's instructions in deciding his claim.

21

### III.  CONCLUSION

For the reasons set forth herein, McNitt's motion for a new trial (document no. 139) is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 9, 1994

cc:  David KillKelley, Esq.
     Chester Janiak, Esq.